STATE MUTUAL LIFE ASSURANCE
COMPANY OF AMERICA et al.,
Plaintiffs,

v.

ARTHUR ANDERSEN & CO., Defendant.

ARTHUR ANDERSEN & CO., Defendant.
and Third-Party Plaintiff,

v.

Joseph A. BONURA et al., Third-
Party Defendants.

No. 71 Civ. 4036.

United States District Court,
S. D. New York.

Jan. 16, 1975.

See also, D.C., 63 F.R.D. 389.

Wachtell, Lipton, Rosen & Katz, New
York City, for plaintiffs, by George A.

Katz, Douglas S. Liebhafsky, Michael W. Schwartz, New York City, of counsel.

Dunnington, Bartholow & Miller, New York City, for defendant and third-party plaintiff Arthur Andersen & Co., by John A. Stichter, New York City; Wilson & McIlvaine, Charles W. Boand, Chicago, Ill., of counsel.

Amend & Amend, New York City, for third-party defendant Empire National Bank.

Squadron, Gartenberg, Ellenoff & Plesent, New York City, for proposed additional third-party defendants the "Aristocrat group", by Theodore Ellenoff, New York City, of counsel.

Rubin Baum Levin Constant & Friedman, New York City, for third-party defendant Herman L. Meckler, by Stephen A. Marshall, New York City, of counsel.

## MEMORANDUM DECISION AND ORDER

WERKER, District Judge.

Almost three years after the filing of its answer, defendant and third-party plaintiff Arthur Andersen & Co. ("Andersen") seeks to bring three additional third-party defendants, Aristocrat Angus Ranch, Ben R. Houston and Charles D. Alexander ("the Aristocrat group") into this action. Because of the time interval between the filing of Andersen's answer and its motion to implead the Aristocrat group, questions relating to the reasons for the delay, prejudice to the parties, and the purposes of Rule 14 of the Federal Rules of Civil Procedure must be examined.

## BACKGROUND

This action was instituted after the financial collapse of Black Watch Farms, Inc., the corporate successor of Black Watch Farms, a New York limited partnership, which raised, bred, maintained and sold purebred Aberdeen Angus cattle for its own account and for the account of herdowners who had purchased their herds primarily for tax shelter purposes. Plaintiffs are State Mutual Life Assurance Company ("State Mutual") and three affiliated insurance companies which during the period 1968 through 1970 bought $10,350,000 of Black Watch debt securities. These securities were sold in 1970 for approximately $80,000. Defendant Andersen, as auditors for Black Watch, certified the Black Watch financial statements for fiscal years ending June 30, 1968 and June 30, 1969 and rendered a "compliance certificate" with respect to a 1968 loan agreement. Plaintiffs assert claims against Andersen based on violation of the securities laws, common law fraud, negligence and breach of contract. Plaintiffs' basic contention is that the 1968 and 1969 financial statements and Andersen's opinion thereon were false and misleading and omitted to state material facts related to the financial effects of certain embezzlements and other improper acts engaged in by Black Watch through Jack R. Dick, the former general partner and chief executive officer of Black Watch Farms.[1]

Within ten days of the filing of its answer, Andersen filed a third-party complant against third-party defendants Jack R. Dick, Joseph A. Bonura, Empire National Bank (formerly County National Bank) and Herman L. Meckler. Bonura was the comptroller and chief financial officer of both Black Watch Farms and Black Watch Farms, Inc.; Empire National Bank maintained depository and checking accounts for Black Watch Farms and its corporate succes-

---

1. Jack R. Dick is now dead, and Lynda Dick, as executrix of the estate of Jack R. Dick, has been substituted as a party. On July 11, 1968 Dick sold his 57% interest in the Black Watch partnership to the Bermec Corporation. Bermec set up Black Watch Farms, Inc., and subsequently acquired the remaining 43% of the partnership which it later dissolved. Bermec is presently involved in Chapter X reorganization proceedings.

sor; Meckler was a director, president and chief executive officer of Black Watch Farms, Inc., as well as chairman of the board and chief executive officer of the Bermec Corporation. Andersen alleges that Dick, Bonura, Empire and Meckler, committed a fraud and deceit upon Andersen during the course of its examination of the Black Watch financial statements by intentionally concealing and withholding certain information from Andersen concerning what has become known in this litigation as the "official check scheme."

Dick is portrayed as the mastermind of the scheme. It is alleged that he created fraudulent invoices reflecting purchases of cattle from four ranches at vastly inflated prices. The cattle were sold to Black Watch on an installment basis with each installment listed on the invoices. For each installment payment Dick caused Black Watch to issue a check to Empire to purchase an official (cashier's) check of Empire payable to the appropriate vendor. While some of the official checks were sent to the vendors, others were returned to Empire which would then cash the check for Dick over a purported blank indorsement on the name of the particular vendor. Dick is alleged to have received proceeds of over $3,000,000 from the scheme.

Andersen alleges that Empire, Meckler and Bonura were participants in the scheme, and had concealed and withheld information from Andersen. The Aristocrat group is also alleged to have been involved in the scheme. Aristocrat Angus Ranch was one of the four ranches which sold cattle to Black Watch. Ben R. Houston and Charles D. Alexander are the two partners of Aristocrat Angus Ranch. The fraudulent acts alleged to have been committed by the Aristocrat group include: (1) the delivery of a quantity of blank stationery containing the official letterhead of Aristocrat Angus Ranch to Dick—Dick allegedly used this stationery to prepare fictitious invoices covering cattle sales to Black

Watch; (2) the concealing of the scheme by mailing the true and correct cattle invoices directly to Dick in New York, rather than to Black Watch, and (3) ignoring Black Watch's written requests to confirm to Peat, Marwick, Mitchell & Co. (the prior auditors) and Andersen, the correct balance of money owed to Aristocrat by Black Watch. According to Andersen, by permitting the impleading of the Aristocrat group, the cast of characters involved in the official check scheme would be completed.

After Andersen filed its original third-party complaint against Dick, Bonura, Meckler and Empire Bank, a series of pleadings were instituted by all the parties which have been described by then District Judge Gurfein, in a prior opinion in this case, as "somewhat reminiscent of Chitty's book on common law pleadings." Briefly summarized the pleadings show that Empire Bank has counterclaimed against Andersen and cross-claimed against Andersen, Bonura, Meckler and Dick. Dick has counterclaimed against Andersen and Meckler and Bonura have cross-claimed against Andersen. State Mutual has filed Rule 14 complaints against Empire Bank and Meckler.

## CURRENT STATUS OF THE ACTION

On November 8, 1974, a pre-trial conference was held and the date of November 15, 1975 was established as a cut-off date for the completion of all discovery. Discovery to date has proceeded in three phases. First, plaintiff has obtained documents and taken depositions from Empire Bank and several of its employees. This phase of discovery is nearly completed. Second, plaintiff took discovery of the Aristocrat group. Third, plaintiff has begun discovery against Andersen. This phase has involved the production of Andersen's work papers for the Black Watch audits and the taking of depositions of Andersen employees. Several more depositions of Andersen employees are also planned.

Andersen and the other third-party defendants must still conduct their own discovery. To date, over 35,000 documents have been produced and approximately 40 days of depositions have been taken. Andersen has estimated that discovery for the entire case is approximately fifty percent completed.

## RULE 14(a) AND LOCAL CIVIL RULE 16

■■ A party who seeks to implead third-party defendants after 10 days from the filing of its answer must obtain leave of court. Rule 14(a) Federal Rules of Civil Procedure. Such a motion is within the sound discretion of the District Court which must balance the benefits of liberal third-party practice—judicial economy, consistency of results and the avoidance of circuity of action—against the possible prejudice to the plaintiff and third-party defendants. Olympic Corp. v. Societe Generale, 462 F.2d 376 (2d Cir. 1972); Braun v. Hecht, 21 F.R.D. 391 (S.D.N.Y.1957); Johns Hopkins University v. Hutton, 40 F.R.D. 338, 346 (D.Maryland 1966), aff'd in part, rev'd in part, 422 F.2d 1124 (4th Cir. 1970). 3 J. Moore, Federal Practice ¶ 14.05[1] (2d ed. 1974). These competing considerations were summarized by then District (now Circuit) Judge Mansfield in Lyons v. Marrud, 46 F.R.D. 451, 453 (S.D.N.Y.1968):

> "The granting of the motion will avoid a multiplicity of litigation that would be occasioned by the institution of independent, substantially duplicative, complicated, and protracted separate actions, which would otherwise be undertaken by the third party plaintiffs. Thus the effect of joining the third party and cross claims is to save

the time of the Court and expense to the parties, without any appreciable prejudice to the opposing defendants."

Rule 16 of the Civil Rules for the United States District Court for the Southern District of New York provides that:

> "A motion for leave to bring in a third party defendant under Fed.R. Civ.P. 14 shall be made within six months from the date of service of the moving party's answer to the complaint or reply to a counterclaim, except that motions of this nature may be granted after the expiration of such period in exceptional cases upon a showing of special circumstances and of the necessity for such relief in the interest of justice and upon such terms and conditions as the Court deems fair and appropriate."

■■ Since the six month period has long since expired, the Court must determine whether this is an exceptional case and whether special circumstances are present. In apparently the only reported case discussing Local Civil Rule 16, Moore v. American Export Isbrandtsen Lines, Inc., 56 F.R.D. 565, 568–569 (S. D.N.Y.1972), Judge Brieant, in permitting impleader, considered such factors as whether the third-party plaintiff effected any deliberate delay, was derelict in filing the third-party complaint, and whether prejudice would result to any of the parties. In the Eastern District of Pennsylvania, where a rule similar to Local Civil Rule 16 is in effect,[2] there are several reported decisions which discuss the factors to be considered by a Court in determining whether to allow impleader more than six months after the filing of an answer.[3] In one of the

---

2. Rule 24(a) of the Local Rules of Civil Procedure for the Eastern District of Pennsylvania provides that: "A motion by a defendant for leave to bring in a third-party defendant under F.R.Civ.P. 14(a) shall be made within six (6) months from the date of service of the moving defendant's answer to the complaint." Although the Rule is mandatory in terms it has not been so stringently construed. See, Goodman v. Neff, 251 F.Supp. 562, 564 (E.D.Pa.1966). See also, 6 Wright & Miller, Federal Practice and Procedure § 1454 at 296 (1971).

3. Several of the decisions are collected in Kubik v. Goldfield, 61 F.R.D. 572 (E.D.Pa. 1974).

leading cases from that district, Chief Judge Lord noted that:

"The cases construing Local Rule 19 [now Local Rule 24] suggest that the factors to be considered in determining whether leave to join a third-party defendant shall be granted after six months are whether the defendant's delay is excusable, whether prejudice will result to the third-party defendant, and whether the trial of the principal action will be delayed or unduly complicated. The burden is obviously on defendant to justify his late application for leave to join a third-party."

Goodman v. Neff, 251 F.Supp. 562 (E. D.Pa.1966).

In this case Andersen contends that although it knew before 1971 that fictitious invoices on Aristocrat stationery were used by Dick in his official check scheme, the basis for third-party claims against the Aristrocrat group did not become known until January, 1974. At that time depositions were taken of the Aristocrat group and Andersen claims it then discovered that Aristocrat had knowingly provided Dick with its blank stationery; that Aristocrat's failure to respond to Andersen's accounts payable confirmation request of May 27, 1968 was due to the fact that an accurate response would disclose a discrepancy between Black Watch's books and Aristocrat's books; and that Aristocrat had made a false confirmation of its accounts payable account from Black Watch to Peat, Marwick and Mitchell.

Plaintiff contends that since Andersen knew all along that Dick had used Aristocrat stationery, Andersen could have taken depositions of the Aristocrat group back in 1971. In addition plaintiff argues that the 10 month delay since January 1974 in filing the motion to implead the Aristocrat group is not satisfactorily explained. Andersen's explanation for this latter delay is that the time was spent in reviewing and evaluating the Aristocrat depositions, await-

ing the correction and signing of the depositions, and the filing of third-party claims in two related cases and the involvement of counsel in depositions in this and related cases. While some of the delay seems inexcusable, it does not appear to be willful. Unreasonable delay is only one factor to be considered on this motion and is not necessarily determinative. See, e. g., Johns Hopkins University v. Hutton, 40 F.R.D. 338, 340 (D.Maryland 1966).

A more serious consideration in this case is the possible prejudice to the parties. The plaintiff does not object to the impleader as long as the November 15, 1975 cut-off date for discovery is not changed. Andersen also has no desire to extend the cut-off date. Although the Federal Rules of Civil Procedure do not provide for it, the Court has permitted the Aristocrat group to file papers in opposition to the motion so that possible prejudice to those defendants might better be evaluated. The Aristocrat group contends that it would need eight months to digest all the discovery taken to date and an additional seven months to conduct its own discovery. If Andersen's motion is granted, they would seek an extension of the discovery cut-off date to April 15, 1976.

The proposed third-party complaint against the Aristocrat group asserts claims for contribution or indemnity based on their involvement along with the other third-party defendants in the official check scheme. While this litigation has been characterized by all the parties and Judge Gurfein as a complicated case, the addition of the Aristocrat group would not significantly add to the complication but rather would bring all the parties to the scheme into one action. After considering all the factors outlined above, it is the Court's conclusion that Andersen should be permitted to file its third-party complaint against the Aristocrat group. In this way, all the issues can be settled in one litiga-

tion. The complicated circumstances of this case and the benefits to be derived by allowing the filing of the third-party complaint make this an exceptional case where the interest of justice would be best served by granting the motion.

It is also this Court's conclusion that the November 15, 1975 discovery cut-off date should not at this time be extended. Although in a somewhat similar case where discovery would have to be completed in less than four months, impleader was denied,[4] here the parties will have ten months to finish discovery. The Aristocrat group are third-party defendants in two related cases, Tucker v. Arthur Andersen & Co., 73 Civ. 4259, a purported class action involving almost all the same parties, and Rosen v. Dick, 73 Civ. 2388, an action brought by the Bermec Corporation trustee in reorganization. Although the Aristocrat group claims that little has happened in those two cases, they have filed answers to Andersen's nearly identical third-party complaint in those cases. In addition, the Aristocrat group has been the subject of depositions in this action and are obviously aware of the nature of the claims in this proceeding.

To avoid any delay in pretrial proceedings, the Court is assigning this case to a United States Magistrate for all pretrial purposes. The Magistrate will be given specific instructions by this Court to have all present parties furnish the Aristocrat group with the documents and depositions taken to date as soon as possible. In addition the Magistrate will closely supervise the taking of further discovery in this case and make periodic reports to the Court. If the Magistrate subsequently forms the opinion that the November 15, 1975 cut-off date cannot be met, then the Court will at that time consider an extension of that date.

So ordered.

4. Oberholtzer v. Scranton, 59 F.R.D. 572 (E.D.Pa.1973).