The "CRUDE CREW," et al., Plaintiffs,

v.

McGINNIS & ASSOCIATES, INC., et al., Defendants and Third-Party Plaintiffs,

v.

Robert H. BILLINGSLEY, et al., Third-Party Defendants.

No. 82–C–1399.

United States District Court, E.D. Wisconsin.

Sept. 16, 1983.

William R. Soderstrom, Fox, Carpenter, O'Neill & Shannon, S.C., Milwaukee, Wis., for plaintiffs.

John C. Childs, Popham, Haik, Schnobrich, Kaufman & Doty, Minneapolis, Minn., for McGinnis.

David H. Conn, Minneapolis, Minn., for Billingsley.

## DECISION AND ORDER

WARREN, District Judge.

This case arises out of the promotion and sale of certain fractional working interests in oil and gas wells by the defendants and third party plaintiffs, McGinnis & Associates, Inc. and John F. McGinnis ("McGinnis"). On November 5, 1982, some three years after purchasing oil and gas leases from McGinnis, plaintiffs, an association of individuals known collectively as the "Crude Crew," filed a complaint against McGinnis, alleging three alternative causes of action: first, that McGinnis failed to repay the consideration Crude Crew paid for the unregistered securities or working interests following Crude Crew's notice of election voiding the sale; second, that in the offer and sale of those securities to the defendants, McGinnis failed to state material facts necessary in order to make the promotional statements not misleading; and third, that McGinnis failed to make periodic payments

to Crude Crew pursuant to a stipulation entered into by the parties in an effort to settle their dispute extrajudicially. On February 22, 1983, Crude Crew filed a motion for summary judgment as to this third claim.

On December 17, 1982, McGinnis filed a third party complaint against Robert G. Billingsley and Telex Oil & Gas Company, Inc. ("Billingsley"), allegedly on whose behalf McGinnis promoted and sold the oil and gas well interests. In its third party complaint, McGinnis makes various claims for indemnification and contribution; alleges unjust enrichment, infliction of emotional distress, and violations of the Securities Act of 1933 and the Securities and Exchange Act of 1934; and seeks compensatory and punitive damages based on Billingsley's allegedly material misrepresentations regarding the promotion of the oil and gas interests.

On February 17, 1983, McGinnis filed a motion for summary judgment as to the first claim in its third party complaint. That claim alleges that Billingsley breached a settlement agreement of June 15, 1981, in which Billingsley agreed to undertake certain obligations in the event revenue from the oil wells assigned to McGinnis was insufficient to make payments under the stipulation between Crude Crew and McGinnis.

On March 23, 1983, McGinnis filed a motion to implead as third party defendants Robert J. Dahlman, allegedly the organizer and chairman of the Crude Crew, and John D. Foley, the attorney representing the Crude Crew in its purchase of the oil and gas interests.

For the reasons stated herein, the Court denies Crude Crew's motion for summary judgment as to its third claim; grants McGinnis' motion for summary judgment as to the first claim in its third party complaint; and grants McGinnis' motion to implead Dahlman and Foley as third party defendants.

## FACTS

On or about September 11, 1979, McGinnis was allegedly induced by Billingsley to promote fractional working interests in three oil wells known as the Clay City East-Hartley No. 4, Clay City East-Hartley No. 5, and St. Paul-Meyer No. 1. In this context, McGinnis spoke to members of Crude Crew regarding their investment in these working interests. Dahlman and Foley, Crude Crew's chief organizer and legal counsel, respectively, allegedly contacted Billingsley directly regarding the legal aspects of McGinnis' offering and the anticipated production of and estimated income to be realized from the three oil wells. Based on advice given them by Billingsley, Dahlman and Foley allegedly made certain representations to Crude Crew regarding the investment, upon which Crude Crew members relied in purchasing the oil well interests.

After it became apparent that the wells were not producing to the levels suggested by the information provided by Billingsley, Crude Crew threatened to sue Billingsley and McGinnis, seeking recission of the investment transaction. Although McGinnis denied involvement in the actual sale of the fractional working interests and further denied any wrongdoing in regard to the promotion of the oil well interests, on June 9, 1981, McGinnis signed a stipulation agreement with Crude Crew to avoid the threatened legal proceeding.

Under the terms of that agreement and a promissory note executed pursuant to that agreement, McGinnis was to pay Crude Crew $160,000 plus interest and, in exchange, be assigned Crude Crew's interest in four oil leases subject to Crude Crew's first priority security interest. Upon full payment, Crude Crew was to release McGinnis from all claims and liabilities. Despite repeated requests by Crude Crew, McGinnis has allegedly failed to make recent payments due under the promissory note and is now in default.

On June 15, 1981, McGinnis and Billingsley executed a settlement agreement in which Billingsley agreed that in the event the revenue from the assigned four oil wells was insufficient to make the payments re-

quired by the stipulation, it would pay McGinnis $30,000, would immediately perform additional work on the Clay City East-Hartley No. 5 well, and would provide additional security to be used for the payment of the remaining balance of $130,000 plus accrued interest owing to Crude Crew. In return, McGinnis agreed to transmit the proceeds from the wells to Crude Crew and obtain a release of claims against Billingsley.

In early August of 1981, Billingsley tendered a $30,000 check to McGinnis which was endorsed over to Crude Crew as the first payment of principal pursuant to the stipulation agreement. However, the revenues received by McGinnis from the wells were insufficient to make the required $130,000 payment or installments due Crude Crew. Although McGinnis demanded that Billingsley honor the settlement agreement, Billingsley allegedly refused to perform work on the Clay City East-Hartley No. 5 well and allegedly failed to provide any additional security out of which to satisfy the $130,000 owed under the stipulation agreement.

The merits of the motions for summary judgment filed by Crude Crew and McGinnis thus turn on interpretations of the stipulation and settlement agreements entered into by Crude Crew and McGinnis and McGinnis and Billingsley, respectively. The merits of McGinnis' motion to implead Dahlman and Foley turn on the extent to which judicial efficiency would be promoted if they were brought in as parties.

## THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT

The function of a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure is to permit the trier of fact to pierce the formal allegations in the pleadings and grant relief when it appears from uncontroverted facts set forth in affidavits, depositions, or admissions on file that there are as a matter of fact no genuine issues for trial. *Mintz v. Mathers Fund, Inc.,* 463 F.2d 495, 498 (7th Cir.1972);

*Spiering v. Fairmont Foods Company,* 424 F.2d 337, 340 (7th Cir.1970).

In effect, summary judgment is a method of testing in advance of trial, not just bare contentions found in legal verbiage of pleadings, but whether there is in actuality any real basis for relief or defense. *Swettlen v. Wagoner Gas & Oil, Inc.,* 369 F.Supp. 893, 894 (W.D.Pa.1974). The discussion in 6 J. Moore, Moore's Federal Practice, ¶ 56.15 [1.–0 & 4] (2d ed. 1982) is particularly applicable here:

The function of the summary judgment is to avoid a useless trial; and a trial is not only not useless but absolutely necessary where there is a genuine issue as to any material fact. . . .

The party moving for summary judgment has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in his favor. In discharging this burden he must show that taking his moving papers as true, . . . they establish the lack of such a triable issue of fact; and that they are true.

■ To this end, the Court should be slow in passing upon a motion for summary judgment that would deprive a party of an opportunity to try a claim where there is a reasonable indication that a material fact is in dispute. *Jeute v. Jarnowski,* 393 F.2d 513, 515 (7th Cir.1968); *Hartford Accident & Indemnity Company v. Northwest National Bank,* 228 F.2d 391, 395 (7th Cir. 1955). On the other hand, when it is clear that a litigant's claim rests solely on issues of law, then a party moving for summary judgment is entitled to be protected against the burden of expense and effort entailed in a protracted and intricate trial on that claim. *Raubal v. Engelhard Minerals & Chemicals Corporation,* 364 F.Supp. 1352, 1355 (S.D.N.Y.1973). Indeed, the proper administration of justice requires that the Court's energies and time not be deflected by an unnecessary and time-consuming trial of such an issue. *Schwartz v. Broadcast Music, Inc.,* 180 F.Supp. 322, 325 (S.D.N.Y. 1959).

■ Crude Crew has moved for summary judgment only in regard to the third alternative cause of action in its complaint, based entirely on the default of McGinnis in its obligations pursuant to the stipulation agreement and promissory note it entered into with Crude Crew. In support of its motion, Crude Crew argues straightforwardly that the promissory note was executed by the parties, that its terms were breached, and that damages may be calculated pursuant to a schedule established in the note.[1] Since the entire agreement is contained in the four corners of the stipulation agreement—a document which on its face presents no material issues of fact to be determined at trial—the entry of summary judgment is appropriate here, or so Crude Crew argues.

■ The Court is not entirely unsympathetic to Crude Crew's position. To be sure, the stipulation is, by its very language, a "final, full and complete settlement" in which the various rights and obligations of the signatories are clearly articulated and provisions for payment, guarantee, security, and release and discharge are plainly set out. In this regard, it is generally held that summary judgment on contracts and other written agreements is appropriate when relevant provisions are so straightforward that they can be read in but one way. *See, e.g., Davis v. Chevy Chase Financial, Ltd.,* 667 F.2d 160, 169 (D.C.Cir.1981); *Green v. Valve Corporation of America,* 428 F.2d 342, 344 (7th Cir.1970). In other words, the construction and legal effect of unambiguous writing is for the Court and not the jury, and summary judgment is properly used for interpreting an agreement whose terms are considered by opposing parties to be clear and unambiguous. *Goldinger v. Boron Oil Company,* 375 F.Supp. 400, 413 (W.D.Pa.1974).

In this instance, however, the Court declines to characterize the stipulation as a wholly unambiguous document, as Crude Crew urges. Instead, the Court is of the view that the three specific references to Billingsley—two in the recital or "whereas" portion on page one of the stipulation and the third in the Assignment and Filing section on page three—support McGinnis' contention that there exists a genuine issue of fact as to the manner in which the two arguably interrelated agreements—the Crude Crew-McGinnis stipulation and the McGinnis-Billingsley settlement agreement—were intended to work together to accomplish a release of Crude Crew's claims against both Billingsley and McGinnis. Specifically, the parties chose to include in the stipulation recitals of the facts that Crude Crew has a claim against Billingsley and has allegedly been damaged by Billingsley and that, under the settlement agreement, Billingsley would be obliged to assign to McGinnis certain interests in leas-

---

1. In its brief of February 2, 1983, and the accompanying affidavit of Charles Cass, Crude Crew claimed that McGinnis owed $43,333.33 in principal, $17,872.87 in interest, and an undetermined amount of attorneys' fees and costs. By his letter of August 10, 1983, counsel for plaintiff requested that an additional $43,333.33 be included in its claim for damages, since the anniversary date for payments passed on August 1, 1983. In its letter of August 17, 1983, counsel for McGinnis objected to the inclusion of the additional amount on the grounds that the allegation cannot be made a part of Crude Crew's summary judgment motion unless the complaint is formally amended and McGinnis is given an opportunity to respond. On September 2, 1983, plaintiff's counsel submitted a letter to the Court responding to McGinnis' objections and restating its position on the amount due under the promissory note.

Because the Court concludes that summary judgment on this cause of action is not appropriate under the present circumstances, it need not determine at this stage the exact amount of damages, if any, to which Crude Crew is entitled.

At that same time, the Court concludes that McGinnis need not supplement its original complaint pursuant to Fed.R.Civ.P. 15(d) to claim the additional amounts allegedly due and owing under the terms of the promissory note. Based on its review and reconsideration of the complaint, the Court opines that McGinnis does seek judgment for the entire amount of the promissory note plus accrued interest and reasonable attorneys' fees and that the terms of the note are sufficiently pled to enable the Court to determine the precise amount owing, if any, at the time of trial.

es, a first priority security interest in which would then be assigned to Crude Crew by McGinnis.

These references, coupled with Crude Crew's understanding of the interrelationships among the parties and its appreciation for the nature of their participation in the promotion and sale of the oil leases, prevents the Court from concluding that Crude Crew's third claim presents no material issue as to the intention of the parties. It may well be that Crude Crew and McGinnis fully intended that the terms of the promissory note be honored regardless of Billingsley's performance under the settlement agreement; but that is a matter best reserved for trial at which time the trier of fact will be afforded the opportunity to observe the demeanor and judge the credibility of witnesses whose subjective intent is at issue. *See Consolidated Electric Company v. United States,* 355 F.2d 437, 438–439 (9th Cir.1966).

While it is preferable that identification of contractual obligations in the parties' stipulation be confined to the document itself, any ambiguity requires an analysis of the surrounding circumstances as they reflect the parties' intent—a question of fact which should not be settled by summary judgment. *Ball v. Aetna Casualty and Surety Company,* 58 F.R.D. 362, 363–364 (E.D.Ky.1973); *see also Egger v. Phillips,* 669 F.2d 497, 502 (7th Cir.1982), *on rehearing,* 710 F.2d 292 (7th Cir.1983). Since conflicts and ambiguities are not to be resolved on summary judgment motions, and all doubts as to the existence of a genuine issue of material fact should be resolved against the moving party, *Greenebaum Mortgage Company v. Town and Garden Association,* 385 F.2d 347, 349 (7th Cir.1967), the Court must deny Crude Crew's motion for summary judgment as to its third claim.

■ On the other hand, the Court finds no ambiguity as to the intent of the signatories to the McGinnis-Billingsley settlement agreement. As McGinnis states in its brief supporting its motion for summary judgment based on Billingsley's failure to honor the terms and conditions of the agreement, the issue before the Court is threefold:

(1) Was the settlement signed by Billingsley?

(2) If so, were its terms breached?

(3) If so, what damages should be awarded?

The answer to each of these questions is easily determined. First, there is no doubt that Billingsley signed the agreement; in fact, Billingsley apparently acknowledges its signatory status in both its answer to the third-party complaint and in its counterclaim against McGinnis. Second, the Court is convinced that Billingsley has not met the terms of the agreement; as the affidavit of John F. McGinnis adequately establishes, Billingsley has failed to perform further work on the Clay City East-Hartley No. 5 well, has neglected to pay the contractor for previous work performed on that well, and has failed to provide the additional security out of which McGinnis was to satisfy the debt owed to Crude Crew. Third, the Collateral section of the settlement agreement clearly sets forth Billingsley's obligation to pay McGinnis $130,000 plus accrued interest as additional security.

Like the Crude Crew-McGinnis stipulation, the McGinnis-Billingsley settlement agreement incorporates references to duties undertaken by McGinnis outside the four corners of the document. While such references proved fatal to Crude Crew's motion for summary judgment as to its third claim, they do not preclude summary judgment here since there is no question as to the intent of the parties with respect to the conditions under which the settlement was to be effective. More to the point, the obligations of the parties to the settlement agreement are in no way contingent on the performance of either signatory to the stipulation; the rights and duties arising under the agreement are antecedent to those set forth in the stipulation, not vice versa. Thus, given the facial clarity of the document, the simplicity with which the various rights and obligations of the parties are set forth, and the apparent lack of any factual

issue relating to the intent of the signatories, the Court feels justified in granting McGinnis' motion for summary judgment as to the first claim in its third party complaint. *See Green v. Valve Corporation of America,* 428 F.2d 342, 344 (7th Cir.1970).[2]

### DEFENDANTS AND THIRD PARTY PLAINTIFFS' MOTION TO IMPLEAD

■ The general purpose of Rule 14 is to avoid circuity of actions and to expedite the resolution of secondary actions arising out of or in consequence of the action originally instituted. *Colton v. Swain,* 527 F.2d 296, 299 (7th Cir.1975). The rule guarantees consistent results, saves the time and cost involved in the needless repetition of evidence at a subsequent trial, and prevents the defendant in the original action from being handicapped by the time which may elapse between a judgment against him and a judgment in his favor against a third party defendant. *Ohio River Company v. Continental Grain Company,* 352 F.Supp. 505, 512 (N.D.Ill.1972); *Jordan v. Stephens,* 7 F.R.D. 140, 142 (W.D.Mo.1945).

■ Under subsection (a) of the rule, a defendant may only implead a third party "who is or may be liable to him for all or part of the plaintiff's claim against him." Fed.R.Civ.P. 14(a). Impleader under Rule 14(a) is not a device for bringing into an action any controversy which may happen to have some relationship with it but is designed instead to include parties only on the basis of certain theories of liability. *Arrington v. National Broadcasting Company,* 531 F.Supp. 498, 505 (D.D.C.1982); *de Haas v. Empire Petroleum Company,* 286 F.Supp. 809, 815 (D.Col.1968). Yet, it is not necessary that the claim alleged in the third party complaint be based on the same theory or on the same contract as the claim involved in the complaint of the original plaintiff, as long as both claims arise out of the same transaction or if the third party's liability is in some way dependent on the outcome of the main claim. *American Fidelity & Casualty Company v. Greyhound Corporation,* 232 F.2d 89, 92 (5th Cir.1956); *Paur v. Crookston Marine, Inc.,* 83 F.R.D. 466, 470 (D.N.D.1979); *see also United States General, Inc. v. City of Joliet,* 598 F.2d 1050, 1053 (7th Cir.1979).

■ Finally, a motion for leave to file a third party complaint is addressed to the sound discretion of the trial court. *Farmers & Merchants Mutual Fire Insurance Company v. Pulliam,* 481 F.2d 670, 673 (10th Cir.1973). In determining whether impleader is appropriate, the district court must balance the benefits of the liberal third party practice articulated above against possible prejudice to the plaintiffs and the third party defendants, the complication of issues at trial, the merit of the third party complaint, and any additional expense that would be incurred by the parties. *State Mutual Life Assurance Company v. Arthur Andersen & Company,* 65 F.R.D. 518, 521 (S.D.N.Y.1975); *Kopan v. George Washington University,* 67 F.R.D. 36, 38 (D.D.C.1975).

■ In its brief and supporting affidavit, McGinnis argues that it should be allowed to implead Robert J. Dahlman and John D. Foley as third party defendants. In support of its motion, McGinnis alleges that Dahlman, the organizer and chairman of Crude Crew, promoted the fractional working interests concurrently with McGinnis and that he was, therefore, as responsible or more responsible than McGinnis for any damages incurred by Crude Crew as a result of representations made to its membership based in part on information gotten directly from Billingsley. McGinnis also claims that Foley, Crude Crew's attorney, knew or should have known that McGinnis' promotion of the fractional working inter-

---

**2.** The Court recognizes that its resolution of this issue may facilitate some performance by McGinnis under the stipulation entered into with Crude Crew. In the event the parties are able to reach an agreement in this regard, a motion to alter the pleadings in some respect may be appropriate. In any event, the Court will leave disposition of this matter to the parties and will proceed on the understanding that Crude Crew's third alternative cause of action, alleging breach of the stipulation and promissory note, remains a viable claim in this case.

ests without registration made the investment illegal and voidable and that Foley's failure to disclose that information resulted in Crude Crew's suit against McGinnis for violations of Wisconsin and federal securities laws. In its proposed third party complaint, McGinnis seeks indemnification or contribution for those sums that are attributable to the fault of Dahlman and Foley.

While McGinnis' third party complaint is not based entirely on the same legal theories raised by the initial pleadings in this action, it is clear that both sets of claims arise out of the same promotional and sales transaction. Since McGinnis' several allegations suggest that Dahlman and Foley may, in fact, be found liable to McGinnis for all or part of Crude Crew's claim, the Court concludes that impleader under Rule 14 is appropriate here.

Moreover, given the pivotal role that Dahlman and Foley allegedly played in the promotion of the leases to Crude Crew, their joinder as third party plaintiffs would promote significantly the efficiency of the judicial process. Where, as here, impleader serves to expedite resolution of all matters relating to a single set of events, the Court looks favorably on Rule 14 requests. Accordingly, McGinnis' motion to implead is properly granted.

### CONCLUSION

For the reasons stated herein, Crude Crew's motion for summary judgment as to its third claim is hereby DENIED; McGinnis' motion for summary judgment as to the first claim in its third party complaint is GRANTED; and McGinnis' motion to implead Dahlman and Foley as third party defendants is GRANTED.