**GREENE LINE MANUFACTURING CORPORATION, Plaintiff,**

v.

**FIBREBOARD CORPORATION, Defendant.**

Civ. No. F 89–162.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

April 19, 1990.

Michael J. Kiley, H. Joseph Certain, Kiley, Osborn, Kiley, Harker, Rogers, Michael & Certain, Marion, Ind., for plaintiff.

Dean A. Christopherson, Marchmont J. Schwartz, Trembath, McCabe, Schwartz, Evans, Levy & Dawe, Concord, Cal., for defendant.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on defendant's motion for leave to file a complaint in impleader. The issues have been fully briefed and oral arguments were heard on March 26, 1989. For the reasons set forth below, defendant's motion will be denied.

### Factual Background

Greene Line commenced this action in July, 1989, claiming that Fibreboard had failed to make full payment for certain industrial equipment fabricated by Greene Line at the request of Fibreboard. Fibreboard answered by asserting a counterclaim against Greene Line for breach of warranty and damages sustained by reason of the claimed defects in the equipment. On February 9, 1990, defendant filed a motion for leave to file a complaint in impleader against Isowa Industries Co., Inc. of Japan pursuant to Rule 14(a) of the Federal Rules of Civil Procedure.

The facts as set forth by the parties are as follows. In December, 1985, Fibreboard contracted with Isowa/Cormac (the North American representative of Isowa Industries Co., Inc. of Japan) for the purchase of a corrugated paper manufacturing machine for its plant in Glendale, Arizona and a similar such machine for its plant in Antioch, California. While the machines involved are not identical, they are similar in purpose and function. At the distal end of the machine is a "stacker", the piece of equipment manufactured by Greene Line, which receives the corrugated paper after fabrication and cutting and stacks it for storage, shipping or further fabricating.

By the terms of the contract, Isowa was to provide Fibreboard with one heavy-duty 98 inch high-speed cool corrugator assembly which included one Greene Line double downstacker to be installed in Fibreboard's Glendale plant, and one heavy-duty 78 inch high-speed cool corrugator which included one Greene Line single downstacker to be installed in Fibreboard's Antioch plant. Fibreboard submitted a copy of the purchase order to Greene Line and arranged to pay Greene Line directly for the cost of the stackers. Greene Line was to manufacture and ship directly to the Antioch plant a single downstacker and manufacture and ship directly to the Glendale plant a double downstacker.

The Antioch equipment was manufactured and delivered first and Fibreboard paid Greene Line as agreed for the single downstacker. The Glendale equipment was delivered in November, 1986 and Fibreboard paid Greene Line the down payment for the double downstacker. The balance remaining due on the Glendale stacker was approximately $260,000.00.

In April, 1987, Fibreboard began notifying Isowa that the Greene Line stackers were not operating in an acceptable fashion. Despite attempts to repair the stackers so that they would operate properly, the stackers continued to work improperly on an ongoing basis. In June, 1989, Fibreboard sold its assets, including the corrugator machinery and stackers, to Gaylord Industries. To date, Fibreboard has not paid Greene Line the $260,000.00 balance due on the Glendale double downstacker.

Fibreboard now seeks to implead Isowa as a third party defendant in this action. Fibreboard contends that an indemnity provision in the contract between Isowa and Fibreboard makes Isowa liable to Fibreboard for all or part of Greene Line's claim against Fibreboard. Fibreboard relies on the following contract language:

> [Isowa] shall indemnify and save [Fibreboard] harmless from all loss or liability or expense of any kind arising out of or connected with [Isowa's] failure to comply with any provision of this purchase order contract and [Isowa] shall pay [Fibreboard] a reasonable attorney's fee in any legal action, in which [Fibreboard]

prevails, brought against [Isowa] for breach of, or under any provision of, this purchase order contract.

In actuality, Fibreboard is arguing that Isowa should be impleaded because of the nature of the *counterclaim* against Greene Line for breach of warranty and damages and not for indemnity of Fibreboard's failure to pay the balance due for the double downstacker. At oral argument, Fibreboard conceded that for Greene Line to recover in this action, Fibreboard would have to lose on its breach of warranty claim which would negate any indemnity requirement on the part of Isowa. If Fibreboard prevails on its counterclaim, there would be no liability for Isowa to indemnify against. However, Fibreboard argues that Isowa is ultimately liable for any breach of warranty of the corrugator machinery, including the stackers, and should be a party to this litigation to avoid another lawsuit elsewhere which would involve the same issues.

Greene Line contends that impleader is improvident and would cause substantial prejudice to the plaintiff if permitted in this case. Greene Line argues that this is a simple lawsuit involving a failure to pay claim and a counterclaim for set off due to breach of warranty and damages. To bring in Isowa would unnecessarily complicate the litigation of this case, delay the prompt disposition of Greene Line's claim and increase the costs of this litigation.

At oral argument, Greene Line noted for the court that the contract between Fibreboard and Isowa upon which Fibreboard bases its third-party complaint contains a binding arbitration clause which requires Isowa and Fibreboard to resolve any contractual disputes by arbitration to be held in Japan [1]. Fibreboard responded by noting that it believed the arbitration clause was unenforceable as part of an adhesion contract and intended to raise that issue in defense of a possible motion to dismiss by Isowa. Whether the arbitration clause itself is enforceable will be an additional complex issue which would not arise absent the third-party complaint.

### Analysis

Rule 14(a) of the Federal Rules of Civil Procedure provides in pertinent part:

At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff.

The Seventh Circuit Court of Appeals has held that the language of Rule 14(a) requires the third-party's liability "to arise from the same dispute that gave rise to the plaintiff's claim." *Hartford Acc. and Indem. Co. v. Sullivan*, 846 F.2d 377, 381 (7th Cir.1988). The third-party defendant must be secondarily liable to the third-party plaintiff in the event the third-party plaintiff is found to be liable to the plaintiff; "[t]he rule is not altered merely by the fact that the alleged third-party claim grew out of the same transaction." *U.S. General, Inc. v. City of Joliet*, 598 F.2d 1050, 1053 (7th Cir.1979). "[T]he distinguishing characteristic of a claim filed pursuant to Rule 14(a) is that the defendant is attempting to transfer to the third-party defendant the liability asserted against the defendant by the original plaintiff." *Forum Ins. Co. v. Ranger Ins. Co.*, 711 F.Supp. 909, 915 (N.D.Ill.1989). It is clear that "impleader cannot be used 'as a way of combining all controversies having a common relationship.'" *Id.* (citation omitted).

Applying the foregoing standard, it is apparent that impleader is improper in this instance. Fibreboard's claim against Isowa is for breach of warranties, negligence and indemnification for damages which occurred as a result of the equipment mal-

---

**1.** The purchase order contract between Isowa and Fibreboard contains the following clause:

All disputes, controversies, or differences which may arise between the parties hereto, out of or in relation to or in connection with the Contract, shall be finally settled by arbitration in Japan in accanbance [sic] with the Commercial Arbitration Association. The award rendered by the arbitrator shall be final and binding upon both parties.

function. Such claims do not create derivative liability on the part of Isowa to Fibreboard for Greene Line's claim against Fibreboard for failure to pay. As stated above, the liability required to justify impleader must arise out of the *plaintiff's* claim against the defendant and not out of an asserted defense or counterclaim of the defendant. Isowa is not required by the contract to indemnify Fibreboard for Fibreboard's failure to pay Greene Line the balance due on the double downstacker.

 Furthermore, even if impleader were appropriate, this court would deny the motion as improvident. The grant of leave to file a complaint in impleader is within the sound discretion of this court. *Farmers & Merchants Mutual Fire Insurance Company v. Pulliam,* 481 F.2d 670, 673 (10th Cir.1973). In determining the propriety of an impleader request, this court must look at whether the plaintiff or potential third-party defendant will suffer prejudice, whether the impleaded claim will complicate matters at the time of trial, whether the third-party claim has merit and whether granting leave to implead will impose significant additional costs on the parties. *Crude Crew v. McGinnis & Associates, Inc.,* 572 F.Supp. 103, 109 (E.D.Wis. 1983).

The balance weighs heavily against granting leave to implead. Plaintiff has brought a simple claim against Fibreboard for its failure to pay a debt. Fibreboard's counterclaim against Greene Line cannot implicate the contract between Fibreboard and Isowa since Greene Line was not a party to that contract. Therefore, inclusion of the contract dispute between Isowa and Fibreboard would add issues not required to be tried for resolution of this case as it stands without the impleaded claim. Furthermore, the fact that Fibreboard anticipates a debate concerning the issue of whether it can even bring its proposed complaint against Isowa in light of the mandatory arbitration clause would significantly delay resolution of the plaintiff's initial claim. Finally, Fibreboard is free to file a separate action against Isowa asserting its breach of warranties, negligence and indemnification claims. There will be no prejudice to Fibreboard by denying its motion for leave to implead; however, a grant of such leave would severely complicate the issues in this case, increase the cost to the parties of this litigation and cause unnecessary delay in the resolution of plaintiff's claim.

### Conclusion

Accordingly, based on the foregoing, defendant's motion for leave to file a complaint in impleader is hereby DENIED.