Jacob OLINER, As Trustee in Bankruptcy of the Estate of Zsa Zsa, Ltd., Bankrupt, Plaintiff,

v.

McBRIDE'S INDUSTRIES, INC., Bernard W. Berger, David Stern, Edward A. Ochs, Zsa Zsa Gabor, Zsa Zsa International, Inc., George D. Millay, Elmer Slavik and Donald Slavik, Defendants.

In re ZSA ZSA LIMITED, Bankrupt.

No. 72 Civ. 4613 (CHT).

United States District Court,
S.D. New York.

June 26, 1984.

As Amended Nov. 28, 1984.

Jacob Oliner, New York City, for plaintiff.

Halperin, Shivitz, Eisenberg, Schneider & Greenawalt, New York City, for defendant Zsa Zsa Gabor; William S. Greenawalt, New York City, of counsel.

## OPINION

TENNEY, Senior District Judge.

Zsa Zsa Gabor ("Gabor"), the only remaining defendant in this action, moves pursuant to Rule 55(c) of the Federal Rules of Civil Procedure for an order setting aside an entry of default and setting aside the striking of her answer.[1] Plaintiff, Jacob Oliner ("Oliner"), opposes the motion, or, in the alternative, argues that the motion should be granted on certain conditions which he has set forth in his papers. Defendant's motion is granted in part and denied in part. The Court will set aside the default on the two conditions set out below. The Court will not, however, reinstate defendant's answer.

### History of the Action

This suit, which was commenced in 1972, alleges the existence of schemes and con-

---

**1.** With respect to the relief sought from the striking of defendant's answer, defendant's motion will be deemed to be addressed to the inherent power of the court to reconsider interlocutory orders prior to the entry of final judg-

ment. *See* 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2852, at 145 (1973 & Supp.1984); *cf. Nakhleh v. Chemical Constr. Corp.,* 366 F.Supp. 1221, 1223 (S.D.N.Y.1973).

spiracies to transfer assets from a cosmetics company by the name of Zsa Zsa, Ltd., which has been adjudicated a bankrupt, to another company or companies. Plaintiff Oliner brought suit in his capacity as trustee in bankruptcy of the estate of Zsa Zsa, Ltd. When defendant Gabor filed her answer in 1973 she was represented by a firm then known as Smith, Panish & Getlan. (The name "Smith, Panish" will be used hereinafter to refer to this firm both before and after its name changes.) Oliner himself has always been the attorney of record for plaintiff. However, despite the fact that plaintiff never moved for an order of substitution of attorneys, one Solomon P. Glushak, Esq. ("Glushak") acted on plaintiff's behalf for a period of time during the course of this action.

The sequence of relevant events in the history of this action is as follows. In November 1973, Gabor was deposed by Glushak, who indicated during the course of the deposition that he would move for permission to file a supplemental complaint to include allegations related to a company called "Cosmedico" or "Cosmetico." Glushak also stated that he would want to depose Gabor further pursuant to this supplemental complaint. Plaintiff did not, however, proceed to seek leave to file a supplemental pleading. Instead he now asks that, as a condition to having the default set aside, defendant be required to give her consent to an amendment of the complaint "to include allegations of her activity on behalf of Cosmetico." Affidavit in Opposition to Jacob Oliner, Esq., sworn to Sept. 6, 1983 ("Oliner Aff."), at 6.

During 1973 and 1974, there was considerable activity in the case. However, this activity pertained almost exclusively to the claims against Elmer Slavik, Donald Slavik, and George Millay. Plaintiff's claims against these three defendants were dismissed early in 1975.

In December 1975, Smith, Panish sent a letter to Glushak. This letter, evidently written in response to a telephone call from Glushak, expressed the firm's surprise at hearing from him for the first time since the deposition in 1973 and stated, "We do not represent Zsa Zsa Gabor any longer in this matter." Letter to Solomon Glushak, Esq. from Smith & Panish (Dec. 17, 1975), Exh. D to Affidavit of William S. Greenawalt, sworn to Aug. 12, 1983 ("Greenawalt Aff."). Leave of the court for substitution of counsel was not, however, requested by defendant.

In March 1978, when there had been no docketed activity in the case for three years, the action was closed by the Court. In May 1978, Philip Smith of Smith, Panish stated in a letter to Oliner: "It was our belief that any action against [Gabor] had been dropped," and "[W]e do not know whether or not we represent [Gabor] at this time.... We are forwarding a copy of your letters to the address [for Gabor] which last appears on the file ...." Letter to Jacob Oliner, Esq. from Philip Smith (May 24, 1978), Exh. E to Greenawalt Aff. In August 1979 the case was reopened on plaintiff's motion.

In the summer of 1981, plaintiff Oliner served on Smith, Panish a notice to take the deposition of defendant Gabor. Smith, Panish returned the notice to Oliner stating that the firm had not been in touch with Gabor for over five years, and that "[s]he is married to a Michael O'Hara, a lawyer in Los Angeles who now represents her." Letter to Oliner & Oliner, Esqs. from Philip Smith (Aug. 11, 1981), Exh. F to Greenawalt Aff. Oliner subsequently moved to strike Gabor's answer pursuant to Rule 37. Fed.R.Civ.P. 37. In December 1981, the Court granted plaintiff's motion on the ground that plaintiff had "made several good-faith attempts to locate and serve papers upon the defendant ..., who failed to appear at her deposition and who has left the jurisdiction without providing to plaintiff the name of substituted counsel on whom to serve papers ...." Memo Endorsed Order filed Dec. 23, 1981, 72 Civ. 4613 (CHT).

In November 1983, Oliner indicated to the Court that he intended to move for a default judgment against Gabor. In De-

cember the Court notified Oliner that his claims against Gabor would be dismissed for failure to prosecute if he did not within 60 days give evidence of service or attempted service upon Gabor of the notice of application for a default judgment. In February 1983, within the allotted time, Oliner's son and partner, S. David Oliner, notified the Court that service on Gabor had been made by means of the Serpico Agency, Inc. in Los Angeles, which had determined Gabor's current place of residence. Letter to this Court from S. David Oliner (Feb. 8, 1983). The agency's $300.00 fee consisted of a $25.00 "document fee" and a $275.00 fee for "relocation." *See* Exh. A to Oliner Aff.

In April 1983, a Stipulation and Order of Settlement and Discontinuance was filed as to all claims against all remaining defendants except Gabor. A month later, plaintiff filed a request with the clerk of this court for a judgment of default against Gabor.[2] During the ensuing months, there were evidently some settlement negotiations between counsel. In July, however, plaintiff submitted a motion to the Court together with a proposed order setting a hearing on damages.[3] In August, a "Notice of Appearance" was filed on behalf of Gabor in which William Greenawalt for the firm of Halperin Shivitz Eisenberg Schneider & Greenawalt stated that "we are retained as attorneys for [Gabor in this action]." Notice of Appearance filed Aug. 3, 1983, 72 Civ. 4613 (CHT).

In the fall of 1983, Gabor made the motion presently before the Court for an order setting aside her default and setting aside the striking of her answer. Plaintiff opposed the motion, but also argued in the alternative that if the motion were granted,

it should be on the following conditions: (1) that defendant reimburse the firm of Oliner & Oliner for the costs of locating and serving her, (2) that defendant consent to the further amendment of the complaint to include allegations of Gabor's activity on behalf of "Cosmetico," and (3) that defendant list the amount of money she has received from the three companies named in the current complaint, and from "Cosmetico."

## Discussion

█ An entry of default may be set aside for good cause shown. Fed.R.Civ.P. ("Rule") 55(c). The latter test is to be distinguished from the less lenient test under Rule 60(b) for setting aside a judgment of default. *Broder v. Charles Pfizer & Co.,* 54 F.R.D. 583, 583 (S.D.N.Y.1971). All doubts should be resolved in favor of the party seeking relief from a default so that a determination may be made on the merits. *See Davis v. Musler,* 713 F.2d 907, 915 (2d Cir.1983); *SEC v. Vogel,* 49 F.R.D. 297, 299 (S.D.N.Y.1969). Factors which may be considered on such a motion to set aside include whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented. *See Meehan v. Snow,* 652 F.2d 274, 277 (2d Cir.1981). The motion to set aside an entry of default is committed to the sound discretion of the district court. 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2693 (2d ed. 1983). Finally, the trial court may impose certain conditions on the parties in conjunction with the granting of the motion. *Id.* § 2700, at 538. These conditions may be imposed to remedy prejudice which the nondefaulting party suf-

**2.** Pursuant to Fed.R.Civ.P. 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter his default." Thus, in this case, plaintiff's request for an entry of default was docketed and the defendant was duly served

with a notice of the application for a judgment of default.

**3.** In light of plaintiff's arguments in response to defendant's motion, plaintiff's prior motion for an order setting a hearing on damages pursuant to the entry of default is deemed withdrawn without prejudice.

fered as a result of the default or the granting of the motion. *Id.*

In light of the above, the Court finds that the default in this case should be set aside. Neither party's conduct has been exemplary. However, the long, drawn out history of this litigation does not in the view of this Court reveal evidence of willful default. Further, given the lethargic approach which plaintiff has taken to the prosecution of this case, he cannot show substantial prejudice resulting from the default. Finally, it is by no means clear from the arguments presented that defendant lacks a meritorious defense, and the Court deems it appropriate to afford defendant an opportunity to present her defenses.

The striking of defendant's answer will not, however, be set aside. Further, the setting aside of the default is subject to the requirement that defendant file an answer in this action within 30 days of the date of this opinion. If defendant fails to file a responsive pleading within the allotted time period, the default will be reinstated forthwith upon motion by the plaintiff.

Plaintiff requests that three other conditions be imposed on the setting aside of the default. Only one of these, the reimbursement for the costs of finding the defendant and the serving of the notice of default, will be imposed on defendant. If plaintiff wishes to pursue the other two, he must do so through the normal course of pleading practice and discovery.

In summary, the defendant's motion is denied insofar as she asks the Court to set aside the striking of her answer. Her motion is granted insofar as she seeks to have her default set aside. However, this relief is granted subject to the requirement that she file an answer within 30 days. Further, defendant must pay the sum of $300.00 to plaintiff for costs incurred in the service of notice regarding the default proceedings.

So ordered.