Jacob OLINER, As Trustee in Bankruptcy of the Estate of Zsa Zsa, Ltd., Bankrupt, Plaintiff,

v.

McBRIDE'S INDUSTRIES, INC., Bernard W. Berger, David Stern, Edward A. Ochs, Zsa Zsa Gabor, Zsa Zsa International, Inc., George D. Millay, Elmer Slavik and Donald Slavik, Defendants.

In re ZSA ZSA LIMITED, Bankrupt.

No. 72 Civ. 4613 (CHT).

United States District Court, S.D. New York.

May 14, 1985.

---

Jacob Oliner, New York City, for plaintiff.

Frederic Z. Konigsberg, Great Neck, N.Y., for defendant Zsa Zsa Gabor.

## OPINION

TENNEY, District Judge.

The plaintiff has moved pursuant to Fed. R.Civ.P. ("Rule") 12(f) for an order dismissing seven of the affirmative defenses asserted by the defendant, Zsa Zsa Gabor ("Gabor"). In turn, Gabor, the only remaining defendant in this action, has moved, pursuant to Rule 14(a), for leave to serve and file a third-party complaint naming four third-party defendants. Both the

plaintiff and defendant have moved for costs and counsel fees under Rule 11. For the reasons set forth below, each of these motions is denied.[1]

The underlying action was commenced in 1972 by Jacob Oliner ("Oliner"), the trustee in bankruptcy of the estate of Zsa Zsa, Ltd. ("Limited").[2] Limited manufactured and marketed cosmetics and related products. In 1968, Limited entered into a contract with Gabor, in which Gabor agreed to act as Chairman of Limited's Board of Directors, and to promote Limited's products. In 1970, Limited petitioned for reorganization under Chapter XI of the bankruptcy laws, and in 1972, Limited was adjudicated a bankrupt.

The plaintiff alleges in his complaint that during 1971 and 1972, Gabor—together with several other defendants who have since settled with the plaintiff or been dismissed from the case—misappropriated the trademarks, business reputation, and other intangible assets of Limited. In addition, in his second amended complaint, the plaintiff alleges that Gabor received $100,000 from Limited's estate, without the approval of the bankruptcy referee, and without rendering any services.

### Motion to Strike

The plaintiff now moves to strike the following affirmative defenses asserted by Gabor: (a) statute of limitations, (b) lack of personal jurisdiction, (c) res judicata and collateral estoppel, (d) laches, (e) breach of contract by the plaintiff, and (f) the absence of any damages. The plaintiff's motion is denied in all respects.

■ Motions to strike a defense are not viewed favorably by the courts, the general policy being that pleadings should be treated liberally, and that a party should have the opportunity to support his contentions at trial, *see Ciminelli v. Cablevision*, 583 F.Supp. 144, 162 (E.D.N.Y.1984); *Wohl v. Blair & Co.*, 50 F.R.D. 89, 91 (S.D.N.Y. 1970); 5 C. Wright and A. Miller, Federal Practice and Procedure § 1381, at 799 (1969), and it is recognized that such motions are often sought merely as a dilatory tactic. *See F.R.A. S.p.A. v. Surg-O-Flex*, 415 F.Supp. 421, 427 (S.D.N.Y.1976) (citing Wright & Miller, *supra*, § 1380, at 738).

■ A motion to strike will be denied unless the defense asserted is clearly insufficient as a matter of law. *See United States v. 729.773 Acres of Land*, 531 F.Supp. 967, 971 (D.Hawaii 1982); *Durham Indus., Inc. v. North River Ins. Co.*, 482 F.Supp. 910, 913 (S.D.N.Y.1979). If the sufficiency of the defense depends upon disputed questions of law or fact, then a motion to strike will be denied. *See Linker v. Custom-Bilt Mach., Inc.*, 594 F.Supp. 894, 898 (E.D.Pa.1984); *Ciminelli*, 583 F.Supp. at 162; *Sample v. Gotham Football Club, Inc.*, 59 F.R.D. 160, 169 (S.D.N.Y.1973); *Systems Corp. v. American Tel. & Tel. Co.*, 60 F.R.D. 692, 694 (S.D.N.Y. 1973).

■ Therefore, a motion to strike will be granted only if there is a clear showing that the challenged defense has no bearing on the subject matter and that permitting the defense to stand would prejudice the plaintiff. *See Surg-O-Flex*, 415 F.Supp. at 427; 2A J. Moore, Moore's Federal Practice, ¶ 12.21, at 2429 (2d ed. 1985). Because the plaintiff has failed to make this showing, it would be inappropriate to strike the challenged defenses.

### (a) Statute of Limitations

■ According to the plaintiff, the acts complained of took place between 1970 and

---

1. Several additional motions concerning discovery are pending before a magistrate. The plaintiff has moved pursuant to Rule 37 for an order compelling the defendant to answer interrogatories and has requested that expenses incurred in obtaining the order be assessed against the defendant under Rule 37. In response, the defendant has moved for a protective order under Rule 37(a), and has made a cross-motion to compel the plaintiff to respond to interrogatories.

2. The history of this case had previously been set forth in great detail. *See* 102 F.R.D. 561 (S.D.N.Y.1984); 412 F.Supp. 490 (S.D.N.Y.1975); 352 F.Supp. 665 (S.D.N.Y.), *aff'd mem.*, 475 F.2d 1393 (2d Cir.1972).

1972. Oliner, who is both the plaintiff and the attorney in this case, states in his memorandum supporting the motion to strike: "The gist of plaintiff's complaint is a conspiracy between defendant Gabor and others between October, 1970 and February 2, 1972 to deplete the assets of ZSA ZSA, LTD., a debtor-in-possession and to misappropriate the same for the benefit of the said conspirators."

The second amended complaint appears to allege three causes of action: (1) breach of contract, (2) conversion, and (3) trademark violations and unfair competition. Under New York law, the statute of limitations for contract actions is six years, N.Y. Civ.Prac.Law § 213(2) (McKinney Supp. 1984–1985), and for conversion is three years. *Id.* § 214(4). Oliner argues that the applicable statute of limitations is, in fact, New York's six year statute of limitations that applies to actions "for which no limitation is specifically prescribed by law." *Id.* at § 213(1).[3]

The acts complained of are alleged to have occurred between 1970 and 1972 and this action was commenced in 1972. Based on the record currently before the Court, it appears that the suit was commenced in a timely fashion and that the statute of limitations defense is insufficient as a matter of law.

The plaintiff, however, has failed to show that he would be prejudiced in any way if the defense is allowed to stand. Although it seems highly unlikely that the defendant can prevail on this defense, absent a showing of injury to the plaintiff, the Court declines to strike the statute of limitations defense.

### (b) *Lack of Personal Jurisdiction*

The amended answer asserts, as an affirmative defense, that the Court lacks personal jurisdiction over the defendant. The plaintiff contends that the Court has personal jurisdiction under New York's long arm statute, 7B N.Y.Civ.Prac.Law § 302(a) (McKinney 1972 and Supp.1984–1985), which provides for jurisdiction over non-domiciliaries, and the plaintiff therefore moves to strike this defense.[4] The defendant argues that the issue of personal jurisdiction raises legal and factual questions which should be given further consideration. The Court agrees.

■ The determination of whether the defendant had enough contacts with the forum state to satisfy the requirements of § 302 is to be based on consideration of the totality of the defendant's acts within the forum state. *See Cranston Print Works Co. v. Brockmann Int'l,* 521 F.Supp. 609, 613 (S.D.N.Y.1981). The second amended complaint in this action alleges that Gabor was Chairman of the Board of Directors of Limited, and that Limited—which was licensed to do business in New York—had its principal place of business in New York. Based solely on these allegations, and the record currently before the Court, it cannot be said that the plaintiff has shown "to a certainty" that the defense of lack of personal jurisdiction has no merit. *See Durham Indus.,* 482 F.Supp. at 913 (" '[A] defense is good unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense.' ") (quoting *Lehmann Trading Corp. v. J & H Stolow, Inc.,* 184 F.Supp. 21, 22–23 (S.D.N.Y. 1960) ).

■ Although it appears likely that Gabor's contacts with New York were sufficient to support the assertion of personal jurisdiction, the plaintiff's motion to strike

---

**3.** In support of the statute of limitations defense, the defendant merely asserts that it is "too early" to determine whether the statute of limitations bars the action. The defendant does not suggest what statute of limitations should be applied, nor why it may have expired.

**4.** The defendant does not argue, at least for the purposes of this motion, that service was im-

proper. The plaintiff submitted an affidavit of service indicating that a summons and complaint were personally served on Gabor in 1972. The defendant states in her Memorandum of Law that "[t]his affirmative defense was not interposed on the basis that the plaintiff failed to serve the defendant Gabor."

this defense is nevertheless denied since the defense raises questions of fact and law.

### (c) *Res Judicata and Collateral Estoppel*

■ The defendant asserts that the plaintiff's claims are barred under the doctrines of res judicata and collateral estoppel. Both doctrines deal with the question of whether litigation of certain matters is precluded by prior adjudications. *See Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 466 n. 6, 102 S.Ct. 1883, 1889 n. 6, 72 L.Ed.2d 262 (1982). Under res judicata, parties or their privies are precluded from litigating claims that were or could have been raised in a prior action where there has been a final judgment on the merits. *See Allen v. McCurry,* 449 U.S. 90, 94–95, 101 S.Ct. 411, 414–15, 66 L.Ed.2d 308 (1980). Under collateral estoppel, once a court decides an issue of fact or law, that issue cannot be relitigated. *See Montana v. United States,* 440 U.S. 147, 155, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1979); *Statter v. Statter,* 2 N.Y.2d 668, 672, 163 N.Y. S.2d 13, 16, 143 N.E.2d 10, 12 (1957).

In the case at bar, the second amended complaint alleges three claims against the defendant: (1) that Gabor wrongfully transferred her service contract to another company, (2) that Gabor received $100,000 from Limited without rendering any services, and (3) that Gabor participated in misappropriating the trademark, trade name, customer relations, business reputation, and other intangible assets of Limited.[5] All of these claims concern conduct alleged to have taken place between 1970 and 1972.

The defendant asserts, as an affirmative defense, that the plaintiff's claims were determined in the prior bankruptcy proceedings that took place in 1972, *see In the Matter of Zsa Zsa, Ltd.,* 352 F.Supp. 665 (S.D.N.Y.1972), so that the present action is barred. A similar assertion was made once before in this case, by three defendants who were subsequently dismissed from the case; the Court agreed with those defendants that the plaintiff's claims against them were barred by res judicata and collateral estoppel. *See* 412 F.Supp. 490 (S.D. N.Y.1975). In that opinion, the Court specifically evaluated "whether the alleged misappropriation of [intangible] assets, *e.g.,* Zsa Zsa, Ltd.'s good will and trade name, was 'necessarily decided' against plaintiff in the bankruptcy proceedings." *Id.* at 493. The Court concluded that the issue had, indeed, been considered and fully adjudicated. Consequently, the plaintiff's claims against the three moving defendants were dismissed.

■ It is clear that the plaintiff's motion to strike the res judicata and collateral estoppel defenses must be denied since these defenses present a substantial question of law. Indeed, based on the record currently before the Court it appears that these defenses raise colorable claims, which might, under New York law, entitle the defendant to summary judgment or partial summary judgment.

### (d) *Other Defenses*

■ The plaintiff has also moved to strike three other affirmative defenses: (1) laches,[6] (2) breach of contract, and (3) ab-

---

**5.** The second amended complaint also alleges that the defendants originally named in the complaint, including Gabor, "fraudulently formed a New York corporation under the deceptive name of Zsa Zsa International, Inc." This claim appears to be part of the allegation concerning misappropriation of the trade name or trademark of Limited, rather than an allegation concerning a separate wrongful act. In other words, it appears that the plaintiff is claiming that it was "deceptive" to name a company Zsa Zsa International—a trademark or unfair advertising violation; it does not appear that the plaintiff is alleging that the defendants

formed an illegal corporation or violated New York's Business Corporation Laws.

**6.** The doctrine of laches requires proof that (a) the plaintiff was not diligent in litigating the action and (b) the defendant was prejudiced by the delay. *See Costello v. United States,* 365 U.S. 265, 283, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961). Because the existence of prejudice, and length of delay are questions of fact, the motion to strike the defense of laches is denied. *See Churma v. United States Steel Corp.,* 514 F.2d 589, 593 (3d Cir.1975).

sence of damages.[7] These defenses raise legal or factual questions which should be considered on the merits. Accordingly, the plaintiff's motion to strike these defenses is denied.

### Impleader

The defendant moves, pursuant to Rule 14(a), for leave to serve and file a third-party complaint, naming several third-party defendants.[8] For the reasons set forth below, the defendant's motion is denied.

The defendant is moving to implead four of the defendants originally named in this action. The complaint filed in 1972 alleged that the nine defendants named therein, acting together, misappropriated certain intangible assets of Limited. In 1979, the four defendants that Gabor now seeks to implead entered into a settlement agreement with the plaintiff, and the claims against them were subsequently dismissed.[9]

Although it may seem extraordinary that Gabor is seeking to implead these four prior defendants *six years* after they settled with the plaintiff, it is not surprising in light of the manner in which this action has been litigated. The action was instituted in 1972, after Limited was adjudicated a bankrupt. From 1975 to 1978 there was no docketed activity, and therefore, the Court closed the case. In 1979, the plaintiff moved to restore the case to the court calendar and the motion was granted. The plaintiff then attempted to take a second deposition of Gabor. When Gabor did not respond to the notice of deposition, the plaintiff moved, pursuant to Rule 37, to strike Gabor's answer. The Court granted the plaintiff's motion, and in 1983 a default judgment was entered against Gabor. That judgment was subsequently set aside

upon motion by the defendant, and in August 1984, the defendant filed an answer with leave of the Court. *See* 102 F.R.D. 561 (S.D.N.Y.1984). In February 1985, the defendant filed an amended answer in response to the plaintiff's second amended complaint, and in March 1985, the defendant moved for leave to serve and file a third-party complaint.

Rule 14(a) provides in relevant part that "[a]t any time after commencement of the action a defending party ... may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him." However, unless the third-party complaint is filed within ten days of the defendant's answer, the defendant must obtain leave of the court to implead a third party. The purpose of Rule 14(a) is to promote judicial economy, achieve consistency of results, and avoid circuity of action. *See State Mutual Life Assur. Co. v. Arthur Andersen & Co.*, 65 F.R.D. 518, 521 (S.D.N.Y.1975); 3 Moore's Federal Practice, *supra*, ¶ 14.04. The right to implead third parties, however, is not automatic; the decision to permit impleader rests within the sound discretion of the trial court. *See Rosario v. Amalgamated Ladies' Garment Cutters' Union*, 605 F.2d 1228, 1247 (2d Cir.1979), *cert. denied*, 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980); 6 Wright & Miller, *supra*, § 1443 at 208. The court must balance the benefits derived from impleader—that is, the benefits of settling related matters in one suit—against the potential prejudice to the plaintiff and third-party defendants. *See State Mutual*, 65 F.R.D. at 521.

---

**7.** The defendant asserts that "[t]he plaintiff suffered no damages as a result of any of the acts ... alleged in the complaint." Although the defendant designates this as an affirmative defense, it is essentially a general denial. Nevertheless, the plaintiff is not prejudiced by permitting it to stand as a defense, and therefore it will not be stricken. *See Oppel v. Empire Mutual Ins. Co.*, 92 F.R.D. 494, 498 (S.D.N.Y.1981).

**8.** The proposed third-party defendants are (1) Bernard W. Berger, (2) David Stern, (3) Edward A. Ochs, and (4) McBride's Industries, Inc. ("McBride's").

**9.** An order signed by the Court approving the Stipulation of Settlement and Discontinuance was filed on April 27, 1983.

 Under the local rules of this court, an impleader motion should be made within six months of the service of the moving party's answer. For purposes of this motion, the date on which the defendant filed her answer—August 16, 1984—is the relevant date, rather than the date the amended answer was filed. *See In Re "Agent Orange"*, 100 F.R.D. 778, 780 (E.D. N.Y.1984) ("The filing of an amended complaint ... does not afford an opportunity to implead without leave of the court."). Where, as here, the motion is made after the six-month period, the motion will be denied, unless the moving party makes a "showing of special circumstances of the necessity for such relief in the interest of justice...." Rule 3(k), Civil Rules of the United States District Court for the Southern District of New York. Attorneys who violate the six-month rule do so at their own peril. *See Agent Orange*, 100 F.R.D. at 780.

 In applying Rule 14(a) and the local rules, factors to be considered include (1) whether the moving party was derelict in filing the motion, and (2) whether the plaintiff or third-party defendants would be prejudiced by the impleader. *See id.; E.F. Hutton & Co. v. Jupiter Dev. Corp. Ltd.*, 91 F.R.D. 110, 113 (S.D.N.Y.1981); *Moore v. American Export Isbrandtsen Lines, Inc.*, 56 F.R.D. 565, 568–69 (S.D.N.Y.1972). With these factors in mind, the Court concludes that the defendant's motion should be denied.

The plaintiff alleges that Gabor conspired and acted with a number of other parties, including the proposed third-party defendants, to misappropriate certain intangible assets that belonged to Limited. Gabor argues that impleader should be permitted because of the nature of plaintiff's allegations. These allegations, however, for which Gabor now seeks contribution or indemnification, are essentially · the same claims that the plaintiff made against Gabor and the other defendants in 1972. Thus, Gabor has had full and adequate notice of all the facts relevant to the im-

pleader claim since 1972, when the original complaint was filed.

Although Gabor had notice of the relevant allegations, she made no attempt to implead the four prior defendants when they settled with the plaintiff in 1979, nor did she attempt to do so in 1983 when her motion to set aside the default judgment was granted. Even when Gabor was permitted to file an answer in August 1984, she failed to initiate a third-party action.

 Under Rule 14(a) and the local rules, the defendant has the burden of showing a reasonable excuse for delay. *See Agent Orange*, 100 F.R.D. at 781; *Delco Wire and Cable Co. v. Keystone Roofing Co.*, 80 F.R.D. 428, 430 (E.D.Pa.1978). In this instance, the defendant has not sustained that burden. Indeed, she has made no attempt to explain or excuse the delay in moving to file a third-party complaint. Absent any reasonable explanation, it must be assumed that there is no legitimate excuse for the delay, and the defendant has simply moved in an unduly dilatory fashion. *See Connell v. Bernstein Macauley, Inc.*, 67 F.R.D. 111, 116 (S.D.N.Y.1975). The defendant has also made no attempt to show that there are any special circumstances that would justify granting the motion for impleader.

 As previously indicated, the proposed third-party defendants entered into a settlement agreement with the plaintiff in 1979. In light of the fact that six years have passed since that time, it would be unfair and prejudicial to the proposed third-party defendants to grant the motion for impleader. Moreover, adding these defendants to the case would undoubtedly impede the already tortoise-like speed of this action.

It should be noted that denying this motion will not substantially prejudice Gabor's rights, since the denial does not preclude a separate action for indemnity and contribution if Gabor is ultimately found liable to the plaintiff. *See Connell*, 67 F.R.D. at 116; 3 Moore's Federal Practice, *supra,* ¶ 14.03. In sum, because the motion for

22

impleader is untimely and prejudicial, it is denied.

Both the plaintiff and defendant have moved for costs and counsel fees under Rule 11. Although both motions were denied, the motions were not "frivolous." Therefore, costs and attorneys' fees are denied.

### Conclusion

For the reasons set forth above, the plaintiff's motion to dismiss seven of the defendant's affirmative defenses is denied in all respects, and the defendant's motion requesting leave to implead four third-party defendants is denied in all respects. The cross-motions by the plaintiff and defendant for costs and counsel fees are both denied.

So ordered.