Donald **RICHARDSON**, Plaintiff,

v.

**NASSAU COUNTY, Joseph P. Jablonsky, as Sheriff of Nassau County, and Officers c/o Janicello and Karol, Defendants.**

**No. 96 CV 3956 ADS.**

United States District Court,
E.D. New York.

Feb. 8, 1999.

Clurfeld, Corbett & Weissman, LLP, by James J. Corbett, of counsel, Mitchel Field, NY, for plaintiff Donald Richardson.

Owen Walsh, County Attorney of Nassau County, by Deputy County Attorney Charles H. Horn, Mineola, NY, for defendants.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

On this motion by the defendants to vacate their default, the Court is disturbed by the conduct of the Nassau County Attorney's Office which prompted the entry of the default. That conduct can only be described as deliberately indifferent to this case, and disdainful of the time of the Court and the plaintiff's attorney. At issue is whether the actions of the County Attorney's Office rise to the level of "bad faith" warranting denial of the motion.

## I. BACKGROUND

The incarcerated plaintiff, Donald Richardson ("Richardson" or "the plaintiff"), initiated this lawsuit on August 9, 1996 by filing a *pro se* summons and complaint against the defendants, Nassau County, Nassau County Sheriff Joseph P. Jablonsky, and Corrections Officers Janicello and Karol (collectively, the "defendants" or the "County"), pursuant to 42 U.S.C. § 1983, alleging excessive force and due process violations during his confinement at the Nassau County Correctional Facility.

By Order dated February 18, 1997, this Court directed the appointment of counsel from a member of the Pro Bono Panel of the Eastern District of New York. The plaintiff's present attorney, James J. Corbett, was so selected, and he filed a notice of appearance on April 25, 1997.

### A. The County's Violation of Magistrate Judge Boyle's October 23, 1996 Order

On October 23, 1996, United States Magistrate Judge E. Thomas Boyle directed the County to produce, within 60 days of the date of the Order, certain items of discovery, including records pertaining to the incidents at issue in the complaint. During a conference held before the Magistrate Judge on June 30, 1997, more than six months beyond the time limit, Judge Boyle noted that the County had yet to comply (Order dated June 30, 1997). Judge Boyle also found that the County "failed to provide the Court with an adequate reason to justify their failure to file objections or otherwise comply with the discovery order of the Court dated October 23, 1996" (Order dated June 30, 1997). Judge Boyle held that the County defendants were deemed to have waived their right to object to the terms of the October 23, 1996 Order, and directed compliance by July 1, 1997 (Order dated June 30, 1997). In addition, Judge Boyle directed all parties to appear before him for a settlement conference on November 13, 1997.

### B. The County's Failure to Appear at the November 13, 1997 Settlement Conference

In violation of the June 30, 1997 scheduling order, the County did not appear at the November 13, 1997 conference before Judge Boyle (Order dated November 13, 1997). In his Order issued on that date, Judge Boyle stated:

Once again, the County Attorney's Office has frustrated the purpose of a conference—this time a settlement conference by failing to appear. Pursuant to Rule 16(f) of the Fed.R. of Civ.P., on motion of the plaintiff, the County Attorney of Nassau

County is directed to pay to plaintiff's counsel—who appears herein as *pro bono* counsel for the incarcerated plaintiff—reasonable expenses incurred by plaintiff's counsel as a result of the [defense] counsel's non-compliance with the scheduling order of this Court. This shall include compensation to plaintiff's counsel for his time involved in this appearance, computed at the rate of $150.00 per hour [for a total sum of $285.00].

(Order dated November 13, 1997; Corbett Letter dated December 11, 1997).

### C. *The County's Motion for Reconsideration*

According to Corbett's uncontradicted affidavit, when he informed Assistant County Attorney Katrina R. Brooks, who was then assigned to the case, of Judge Boyle's Order directing the County to pay expenses and attorney's fees, she replied that the County "would not fork over a dime."

Subsequently, the County made a letter motion for reconsideration of the sanction. The sole proffered justification for missing the November 13, 1997 conference was that the assigned attorney had left the office, the file was reassigned to Deputy County Attorney Katrina R. Brooks and "the County did not have the case diaried in our office calendar." (Corbett Aff., Ex. F: Letter from Katrina R. Brooks dated December 5, 1997). Rather than accept responsibility for the failure to appear, the County—in what can only be described as a bizarre tactic—attempted to blame *plaintiff's counsel*, saying that he should have told Deputy County Attorney Charles Horn about the conference when he happened to see him earlier that day, even though Horn was not yet assigned to the case. Judge Boyle denied the County's motion for reconsideration of the sanction, finding that the "facts set forth in [defendants'] letter application do not justify the unilateral non-appearance for which the sanction has been imposed." (Corbett Aff., Ex. F: Order dated December 15, 1997).

### D. *The County's Failure to Appear at the August 20, 1998 Conference*

This Court issued an Order, dated July 7, 1998, directing all parties to appear for a conference on August 20, 1998, at 9:00 a.m. The County did not request an adjournment of the conference. The County Attorney's Office did not call, write, fax, or contact Chambers in any manner to advise that none of its attorneys would be unable to attend the conference. The County did not appear on the scheduled date.

Accordingly, on August 20, 1998, the date of the conference, at 9:30 a.m., a half hour after it was scheduled to start, the Court orally ordered that the defendants' answer be stricken on default, that liability be determined in favor of the plaintiff, and that the matter be set down for an inquest as to damages before Judge Boyle. The Court further directed that pursuant to Fed. R.Civ.P. 16(f), the County Attorney pay plaintiff's counsel reasonable compensation, at the rate of $ 150.00 per hour for 1.2 hours for a total sum of $ 180.00, incurred as a result of the defendants' default, consisting of time expended in travel, appearance before the Court, and preparation of the Order. Plaintiff's counsel prepared a proposed order, which this Court signed on August 24, 1998, setting forth these directives.

### E. *The County Attorney's Motion to Vacate the Default Judgment*

In motion papers dated September 24, 1998, the County moved to vacate the Court's August 20, 1998 oral Order. According to the Affidavit of Deputy County Attorney Charles Horn, which is unaccompanied by a Memorandum of Law, he offers the same excuse which Judge Boyle rejected in his December 15, 1997 Order, namely, that:

4. The Office of the County Attorney missed the Status Conference in this matter as the case was originally assigned to an attorney who has since left the office and the matter has been unassigned until now. The absence of the defendants at the August 20, 1998 Conference was a result of law office failure due to the fact that there was confusion as to which attorney was going [to] handle the Conference.

5. The Bureau of Litigation is presently handling 4,500 active cases with only 14 attorneys. The nature of the office fosters

an environment of constant turn-over and while we try our best to ensure that errors such as this occur as infrequently as possible, they do still occur on occasion. To prevent problems in the future, the office is creating a Federal Unit to cure problems we have had with our Federal caseload.

6. As the defendants have complied with all of plaintiff's discovery demands and all discovery has been completed, it is respectfully requested that the defendants not be penalized because of a coverage error by their attorneys.

7. There has been absolutely no prejudice to plaintiff's case.

8. I apologize on behalf of the entire office for wasting the Court's time as well as that of MR. CORBETT, plaintiff's counsel.

(Horn Aff., ¶¶ 4–8) (capitalization supplied in original).

In papers dated September 29, 1998, the plaintiff opposed the County's motion to vacate the Court's August 20, 1998 Order and filed a cross-motion for an order, pursuant to Fed.R.Civ.P. 16(f), imposing sanctions on the defendants in the form of payment to plaintiff's attorneys reasonable expenses and attorney's fees incurred in relation to the motion practice arising out of the County Attorney's failure to appear for a the August 20, 1998 conference. This amounts to a total sum of $450.00, in addition to the $180.00 sanction imposed in this Court's August 24, 1998 Order. Interestingly, the County did not file any opposition to this cross-motion.

## II. DISCUSSION

### A. *Setting Aside a Default: The Standard*

To assess the merits of the defendants' motion, the Court looks to Fed.R.Civ.P. 55(c), which provides:

**Setting Aside Default.** For good cause shown, the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

■ In considering a motion to vacate, "courts have gone beyond the bare wording of the rule and established certain criteria which should be considered in deciding whether the designated standards have been satisfied." *Brien v. Kullman Industries, Inc.,* 71 F.3d 1073, 1077 (2d Cir.1995). In this Circuit, it is well settled that the criteria are as follows: (1) whether the default was willful; (2) whether defendant has a meritorious defense; and (3) the level of prejudice that may occur to the non-defaulting party if relief is granted. *Gucci America, Inc., Guess?, Inc. v. Gold Center Jewelry,* 158 F.3d 631, 634 (2d Cir.1998); *S.E.C. v. McNulty,* 137 F.3d 732, 738 (2d Cir.1998); *American Alliance Ins. Co., Ltd. v. Eagle Ins. Co.,* 92 F.3d 57, 59 (2d Cir.1996); *State Bank of India v. Chalasani,* 92 F.3d 1300, 1307 (2d Cir.1996) (citing *Men's Sportswear, Inc. v. Sasson Jeans, Inc.,* 834 F.2d 1134, 1138 (2d Cir.1987)). Other equitable factors that may be considered include whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about an unfair result. *See Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 96 (2d Cir.1993). These criteria are identical to those used to determine whether to vacate a default judgment under the Rule 60(b)(1) standard of "mistake, inadvertence, surprise, or excusable neglect," although the "good cause" standard is less rigorous because "the concepts of finality . . . are more deeply implicated" in cases of default judgment under Rule 60. *See Enron Oil Corp. v. Diakuhara,* 10 F.3d at 96.

■ In applying this analysis, the Court is mindful of the longstanding preference in the Federal Courts that litigation disputes be resolved on the merits. *See Enron Oil Corp. v. Diakuhara,* 10 F.3d at 95. Any doubts as to whether a default judgment should be vacated will be "resolved in favor of trial on the merits." *Id.* at 98. A " 'district court's grant or denial of relief under Rule 60(b), unless rooted in an error or law, may be reversed only for abuse of discretion.' " *DeWeerth v. Baldinger,* 38 F.3d 1266, 1272 (2d Cir.1994) (quoting *Twelve John Does v. District of Columbia,* 841 F.2d 1133, 1138 (D.C.Cir.1988)); *see also Brien v. Kullman Indus.,* 71 F.3d 1073, 1077 (2d Cir.1995).

## B. Was the Default "Willful?"

■ In *American Alliance*, the Second Circuit explained that a default caused by a filing mistake on the part of the defendant's in-house counsel is not "willful" for the purposes of cases interpreting Rule 60(b)(1). *American Alliance Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d at 61. The rationale for this holding was that the Court "s[aw] no reason to expand this Court's willfulness standard to include careless or negligent errors in the default judgment context." *Id.* As the Second Circuit recently clarified in *Gucci America, Inc., Guess?, Inc. v. Gold Center Jewelry*, 158 F.3d at 634–35, "while a determination that the defendant acted in bad faith would certainly support a finding of 'willfulness,' it is sufficient that the defendant defaulted deliberately." *Id.*

■ Application of these standards reveals that this is a borderline case, because the County came very close to deliberate conduct. At the very least, the County Attorney's Office was grossly negligent in handling this matter. At worst, the Office displayed a disrespectful and cavalier attitude toward the Court and the seriousness of these proceedings.

In this regard, the Court emphasizes that the County Attorney had ample notice of two conferences, and it made no effort to appear or obtain an adjournment from the Court in either case. For example, the County does not dispute that it had notice of the November 13, 1997 conference before Judge Boyle, but deliberately did nothing to communicate with the Court, to arrange for representation at the conference or to request an adjournment. In a similar display of indifference, the County simply opted not to appear for this Judge's August 20, 1998 conference, despite having approximately six weeks advance notice.

This conduct is exacerbated by the County's obstructionist tactics during discovery, over the course of which Judge Boyle properly imposed sanctions for violating a discovery deadline *by more than half a year*. This type of conduct is unacceptable and cannot be condoned.

Nevertheless, bearing in mind the strong preference for resolution of disputes on the merits, the Court concludes that this is not the kind of "willfulness" and "bad faith" contemplated in *American Alliance* —although it is comes close. Giving the County Attorney's Office the benefit of the doubt, a generous review of the affidavit submitted permits the conclusion that a confluence of factors— laxness, negligence and conduct bordering on deliberate indifference—was to blame for the County's defaults. However, giving the County the benefit of the doubt, and in accordance with the settled policy to allow cases to be tried on the merits, the Court finds that it falls short of the "bad faith" and willful conduct required by the Second Circuit.

Accordingly, in its exercise of discretion, the Court finds that the default was not "willful."

## C. Does the County Have a Meritorious Defense?

■ The Second Circuit has stated that a "defense is meritorious if it is good at law so as to give the fact-finder some determination to make." *American Alliance*, 92 F.3d at 61. Although this issue was not addressed in the County's moving papers, Assistant County Attorney Horn proffered a meritorious defense during oral argument by denying the factual allegations which serve as the basis for the plaintiff's claims.

## D. Will the Plaintiff be Prejudiced by Vacatur of the Default Judgment?

■ The Court also concludes that no prejudice will result if the default is vacated. The County promptly made the instant motion several few weeks after the default was entered. During that period, no evidence has been lost or destroyed, and no witnesses have become unavailable or lost their memory regarding pertinent events.

In sum, the Court finds that it is appropriate to vacate the default. Accordingly, the defendants' motion is granted, on the conditions set forth below.

## E. Rule 16(f) Sanctions

■ Fed.R.Civ.P. 16(f) provides that

If a party or party's attorney fails to obey a scheduling or pretrial order, or if no appearance is made on behalf of a party at a scheduling or pretrial conference ... the judge shall require the party or the attorney representing the party or both *to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorneys' fees,* unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust.

Fed.R.Civ.P. 16(f) (emphasis added). The decision to impose sanctions under this rule is vested in the district court's sound discretion. *Simmons v. Abruzzo,* 49 F.3d 83, 87 (2d Cir.1995)

■ It is undisputed that the County failed to comply with this Court's order to attend the pretrial conference. It is also undisputed that the County failed to comply with Judge Boyle's order to attend the settlement conference. The County's proffered excuses for these failures to appear are totally inadequate. Assuming that the County Attorney's Office is overwhelmed by its caseload, this fact in no way justifies ignoring pending cases, defying discovery deadlines, not bothering to seek adjournments from the Court, and failing to notify adversaries and judges of a purported inability to attend conferences. The Court also is not satisfied with the oft-cited excuse that Court Orders are violated because the County Attorney's Office cannot ascertain which deputy is assigned to any particular case. If it is true, as Deputy County Attorney Horn states in his affidavit, that the "nature of the office fosters an environment of constant turn-over," then the Office should have a better mechanism in place for reassigning cases when the assigned deputy county attorney departs. Certainly, the present system—if there is a system—is not working.

It is also significant that the County apparently concedes that Rule 16(f) sanctions are proper, since there is no objection to the plaintiff's cross-motion. For these reasons, the Court grants the plaintiff's cross-motion for an order, pursuant to Fed.R.Civ.P. 16(f), imposing sanctions on the defendants in the form of payment to plaintiff's attorneys reasonable expenses and attorneys fees incurred in relation to the motion practice arising out of defendants' noncompliance with this Court's July 7, 1998 Order directing the parties to appear for an August 20, 1998 conference. The Court also adheres to that aspect of its August 24, 1998 Order which directed the County Attorney's Office to pay plaintiff's counsel $180 for reasonable compensation incurred as a result of the default.

■ Finally, under Rule 60(b), the Court may relieve a party from a default, "upon such terms as are just." Accordingly, a district court may impose certain conditions on the parties in conjunction with the granting of a Rule 60(b) motion "to remedy any prejudice that the non-defaulting party suffered as a result of the default and the granting of the motion." *Henderson v. Wishinski,* No. 95 Civ. 5059, 1997 WL 83413, *3 (S.D.N.Y. Feb. 27, 1997) (citing *Triad Energy Corp. v. McNell,* 110 F.R.D. 382, 386 (S.D.N.Y.1986); *Oliner v. McBride's Industries Inc.,* 102 F.R.D. 561, 563 (S.D.N.Y.1984) [in Rule 55(c) motion, defaulting party must reimburse opponent for costs of finding defendant and serving notice of default] ). "On this theory, Courts in this Circuit have liberally granted plaintiffs' requests for attorney's fees and costs when vacating default judgments." *Id.* (citing *A.I. Credit Corp. v. Deitch,* 1992 WL 175274, at *3 (S.D.N.Y.1992); *Forte v. East Harlem Block Schools, Inc.,* 1993 WL 7577 at *3 (S.D.N.Y.1993); *Dixonweb Printing Co. v. Photo Intercept Coupon Systems, Inc.,* 1995 WL 384415 (S.D.N.Y.1995); 10 Charles A. Wright, et al., Federal Practice and Procedure § 2700 at 538 [2d ed.1983] ). In fact, Courts consistently read this provision as permitting the award of attorney's fees incurred in bringing the default motion as a condition to vacating a default judgment. *See, e.g., Video Power International, Inc. v. Sardella,* No. 89 CV 3201, 1990 WL 47777, at *5 (E.D.N.Y. Apr. 3, 1990); *Walpex Trading Co. v. Yacimientos Petroliferos Fiscales Bolivianos,* 109 F.R.D. 692, 698 (S.D.N.Y.1986); *Roundball Enterprises, Inc. v. Richardson,* 99 F.R.D. 174, 177 (S.D.N.Y.1983)

Here, the plaintiff's default motion and opposition to the County's motion to vacate the default judgment were entirely reason-

504

able and foreseeable. For this reason, the Court conditions its granting the motion to vacate the default on the County's pre-payment of the following: the $180.00 sanction which the Court imposed in its August 24, 1998 Order; $450 in attorney's fees and costs relating to the motion practice arising out of the County Attorney's failure to appear for the August 20, 1998 conference; and $220 in attorney's fees and costs incurred in preparation for the oral argument on the default motion.

## III. CONCLUSION

Having reviewed the parties' submissions, heard oral argument, and for the reasons stated above, it is hereby

**ORDERED,** that the defendants' motion to vacate the default is granted, conditioned on the payment to plaintiff's counsel of the following sums: (1) the $ 180.00 sanction imposed by this Court in the August 24, 1998 Order; (2) $450 in attorney's fees and costs relating to the motion practice arising out of the County Attorney's failure to appear for the August 20, 1998 conference; and (3) $220 in attorney's fees and costs incurred in preparation for the oral argument on the default motion, for a total of $850.00, within twenty (20) days of the date of this Order.

**SO ORDERED.**