Gladys **BLETTER,** Plaintiff,

v.

**INCORPORATED VILLAGE OF WESTHAMPTON BEACH,** Defendant.

No. 98–CV–4628 (ADS).

United States District Court, E.D. New York.

March 8, 2000.

Hermon Bishop, Westhampton Beach, NY, for plaintiff.

Miranda & Sokoloff, LLP, New York City, for defendant, by Michael Miranda, of counsel.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This case involves allegations by the Plaintiff Gladys Bletter ("Bletter") that the Village of Westhampton Beach ("Village") violated her federal civil rights and acted negligently in improperly issuing a certificate of occupancy to the prior owners of Bletter's house. Presently before the Court are the Village's motion for summary judgment and Bletter's cross-motion to preclude the Village from raising defenses based on the Village's failure to file a timely answer.

## I. BACKGROUND

On November 28, 1994, Bletter purchased a house at 176 Beach Road, Westhampton Beach, N.Y. from Allegra Capra and Thomas and Irene Mahoney ("the sellers") for approximately $ 800,000. Pursuant to the terms of the sale, the sellers produced a Certificate of Occupancy for the premises issued by the Village on February 26, 1992, signed by Village Building Inspector Frederick Showers.

According to Bletter's complaint, Showers had issued the permit without first inspecting the house to determine if it complied with the Suffolk County Department of Health Services regulations. Bletter contends that the sellers' attorney was politically well-connected in the Village and that the Village knowingly approved otherwise unacceptable projects for the attorney's clients due to his political influence. Further, Bletter alleges that Showers was aware in 1992 that the sellers were seeking a Certificate of Occupancy in order to sell the property, and that Showers knew a potential buyer would rely on the Certificate.

In October 1996, Bletter was informed by the Suffolk County Department of Health Services that final approval for the sewage disposal and water supply of 176 Beach Road was never received. Inspection revealed that the paved driveway covered the septic system, apparently in violation of Suffolk County Department of Health Services regulations. Bletter contends that this defect in the property was well known to the Village and had previously been the subject of civil proceedings brought by the Village to stop work on the property. Bletter was eventually forced to fence off the area above the underground sanitary system, thus losing 50% of the parking space available in her driveway.

On March 28, 1998, Bletter filed an action against the Village in Supreme Court, Suffolk County, alleging four causes of action. The first cause of action is somewhat unclear, alleging either fraud, in that the Village "fraudulently, with non feasance and intentionally" issued a Certificate of Occupancy "in violation of the rights of the plaintiff," or negligence, in that the Village "had a special relationship to the plaintiff ... because of its actual or constructive notice" of the health violation "warranting the imposition of a duty of reasonable care." The second cause of action is asserted under "42 U.S.C.A. § 1988" for violation of Bletter's civil rights, although the particular right alleged to be violated is not specified. The third cause of action appears to sound in breach of contract, in that "the defendant has lost that which she bargained for in the purchase of the subject premises." The fourth cause of action is also unclear, alleging that "the aforesaid acts were done wilfully, wantonly, or maliciously and are a perverse and obstinate failure to discharge a duty." The Village removed the case to this Court on July 9, 1998.

The Village now moves for summary judgment on the grounds that Bletter's complaint and notice of claim are untimely; that the Village is immune from suit; that Bletter has no property interest to support a Section 1983 claim; and that Bletter has failed to allege a Village policy or custom of depriving persons of their civil rights. Bletter cross-moves to preclude the Village from offering any defenses on the grounds that the Village did not timely file an answer.

## II. DISCUSSION

### A. As to Bletter's cross-motion

In cases removed to federal court prior to the defendant answering, Fed.R.Civ.P. 81(c) provides that the answer must be served within 5 days of the notice of removal. The Village's answer was served some four months after it removed the case. Under the provisions of Rule 81(c), the Village is in default.

However, Bletter never sought nor obtained a default judgment. Therefore, this Court treats the Village's opposition to Bletter's cross-motion as a motion to vacate the default under Fed.R.Civ.P. 55(c).

*See Meehan v. Snow,* 652 F.2d 274, 276 (2d Cir.1981) (opposition to motion for default can be treated as Rule 55(c) motion where a default judgment has not already been entered). In deciding a motion to vacate a default under that rule, the Court must examine three factors: (i) whether the default was willful, (ii) whether the defendant demonstrates the existence of a meritorious defense, and (iii) whether, and to what extent, vacating the default will cause prejudice to the nondefaulting party. *Securities and Exchange Commission v. McNulty,* 137 F.3d 732, 738 (2d Cir.1998); *Gucci America, Inc., Guess?, Inc. v. Gold Center Jewelry,* 158 F.3d 631, 634 (2d Cir.1998); *Richardson v. Nassau County,* 184 F.R.D. 497 (E.D.N.Y.1999).

■ "Willfulness," in the context of a default, refers to conduct that is more than merely negligent or careless. *Id.,citing American Alliance Insurance Co. v. Eagle Insurance Co.,* 92 F.3d 57, 62 (2d Cir.1996) (default resulting from filing error in attorney's office was held not wilful); *Holford USA Ltd. v. Harvey,* 169 F.R.D. 41, 44 (S.D.N.Y.1996) (attorney oversight was held not wilful where attorney participated actively in litigation before and after default). In determining whether the party in default has a meritorious defense on the merits, the Court need only find that the proposed defense, "if proven at trial, would constitute a complete defense" *McNulty,* 137 F.3d at 740; *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 98 (2d Cir.1993). Finally, in deciding whether to vacate, the Court is mindful of the longstanding preference in the Federal Courts that litigation disputes be resolved on the merits, which requires that any doubt as to whether a default should be vacated will be "resolved in favor of trial on the merits." *Id.*

The Village contends that its default resulted from the fact that its counsel changed firms shortly after the petition for removal was filed. According to the Village's reply brief, the attorneys representing the Village left their firm the day after the notice of removal was filed. The record indicates that there were some need-less delays—nearly a month passed before a stipulation of substitution of counsel was finally executed by the present and former firms representing the Village, and more than a month went by before that signed stipulation was filed with the Court—for which the Village offers no excuse. On the other hand, the record also indicates that the Village has actively participated in this litigation from the outset, filing a notice of appearance and demand for complaint before removal, participating in discovery and making the instant motion after removal. *Accord Holford,* 169 F.R.D. at 44. Based on all of the evidence, the Court finds that the Village's default, although largely unexplained, was not so egregious as to be considered wilful. *See McNulty,* 137 F.3d at 738 ("wilful" default exists where conduct is egregious and not satisfactorily explained).

The Court also finds that the defenses raised by the Village—that the statute of limitations bars Bletter's complaint; that the Village is immune from suit; and that Bletter fails to state a Section 1983 claim, are all sufficient, if proven, to dispose of the entire case. Thus, these defenses are "meritorious" as that term is used in considering a motion to vacate a default. *McNulty,* 137 F.3d at 740. Finally, the Court finds no prejudice to Bletter would result from vacating the default. While Bletter perceives the irony of this Court simultaneously vacating the Village's default and allowing it to raise a statute of limitations defense against her, she has not shown that she was in any way prejudiced by the Village's delay.

The Court finds that good cause exists under Rule 55(c) to excuse the Village's delay. Accordingly, Bletter's cross-motion to preclude the Village from raising any defenses is denied.

**B. As to the Village's motion for summary judgment**

The Village raises several grounds in its motion for summary judgment. Because federal question jurisdiction is the basis on

which the case was removed, this Court will first examine the Village's contention that it is entitled to summary judgment on Bletter's Section 1983 claim.

Section 1983 prohibits any person from depriving another of rights secured by the Constitution of the United States. 42 U.S.C. § 1983. Bletter does not specifically identify the particular constitutional right she claims the Village infringed. Reviewing the complaint in the light most favorable to Bletter, the only possible claims that could be supported by the allegations are alleged violations of the Due Process or Equal Protection clauses of the Fourteenth Amendment.

### 1. As to the Due Process claim

█ In order to establish a Due Process claim under Section 1983, Bletter must first demonstrate that she was somehow denied of a protectable property interest. *Zahra v. Town of Southold*, 48 F.3d 674, 680 (2d Cir.1995) *citing Brady v. Town of Colchester*, 863 F.2d 205, 211–12 (2d Cir. 1988).

█ In *Zahra*, the Second Circuit addressed the existence of property interests in a somewhat similar factual scenario. There, the plaintiff obtained a building permit to renovate a building. At the appropriate time in the construction process, the plaintiff requested the Town to conduct a required insulation inspection on the renovated property, but the Town inspector refused. The plaintiff then brought a Section 1983 action, sounding in Due Process, on the ground that the inspector's failure to perform the required inspection denied the plaintiff of a property right. Specifically, the plaintiff contended that because he had a property interest in already-issued building permit, he had an equal property right in the insulation inspection, since such inspection was necessary before he could carry out all of the activities allowed by the building permit. Rejecting this argument, the court held:

> while we acknowledge that, in certain circumstances, a party may have a constitutionally protectable "property interest" in a benefit that affects land use—i.e. a building permit, certificate of occupancy, zoning variance, excavation permit, or business license—we do not recognize, at least on the facts of this case, the existence of such a "property interest" in the procedures giving rise to such an interest.

48 F.3d at 681 (citations omitted). The court went on to state that "the role of an inspection, such as the insulation inspection presently at issue, is to facilitate the issuance of a particular permit or certificate, not to create an independent 'property interest' in the inspection itself." *Id.*

This Court finds the holding in *Zahra* to be controlling in this case. As in *Zahra*, Bletter's claim here seeks to allege a property interest in the **process** resulting in the issuance of the Certificate of Occupancy, not in the granting or denial of the Certificate itself. Like *Zahra*, who claimed that the failure to inspect the insulation effectively denied him of the benefits incident to a duly granted building permit, Bletter contends here that the failure of the Village inspector to adequately inspect the site plans—or to even review the plans at all—denied her the benefits of a properly issued Certificate of Occupancy. Like the Second Circuit, this Court finds that although Bletter could claim a property interest in a Certificate of Occupancy that was improperly withheld from her, she does not have a separate property interest in ensuring that the certification procedure results in a reliable Certificate. This Court agrees with the Second Circuit that

> ... to hold otherwise, aggrieved property owners would be empowered to bring constitutional challenges at virtually every stage of the building process in municipalities. We expressly decline to announce a rule that would obligate federal courts to consider endless numbers of alleged "property interests" arising not from the benefits themselves, but as ex-

tensions of existing or sought property interests.

*Zahra,* 48 F.3d at 682.

This Court therefore finds that Bletter has not alleged that she was denied any protectable property interest. Accordingly, the Village is entitled to summary judgment on her Section 1983 claim to the extent it alleges a violation of Due Process

**2. As to the Equal Protection claim**

Nor does Bletter sufficiently allege an Equal Protection violation. Bletter's complaint implies that the sellers of her house were able to obtain a Certificate of Occupancy, despite their failure to comply with Suffolk County Department of Health Services requirements, because their attorney was well-connected to the political party in power in the Village and thus received political favors.

 A person bringing an action under the Equal Protection clause must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual. *Huebschen v. Department of Health and Soc. Servs.,* 716 F.2d 1167, 1171 (7th Cir.1983). To state an equal protection claim for selective enforcement, plaintiff must show: (1) that he was selectively treated compared with others similarly situated, and (2) that the selective treatment was prompted by an impermissible consideration, such as membership in a suspect class, intent to inhibit or punish the exercise of a constitutional right, or malicious or bad faith intent to injure. *Crowley v. Courville,* 76 F.3d 47, 52–53 (2d Cir.1996); *LaTrieste Restaurant & Cabaret v. Village of Port Chester,* 40 F.3d 587, 590 (2d Cir.1994).

 Nothing in Bletter's complaint can be read to allege that she personally was treated differently from other homeowners by the Village. At best, her complaint alleges that the people she bought the house from received selective treatment from the Village, but such treatment was allegedly preferential, not detrimental. Moreover, even assuming that Bletter could somehow make an equal protection claim based on the selective treatment afforded the sellers of the house, she still could not demonstrate that such treatment was motivated by an impermissible consideration. Bletter alleges that the attorney used by the sellers to obtain the Certificate of Occupancy was politically well-connected, but she does not contend that the sellers themselves engaged in any political speech or other constitutionally protected activity to obtain the Certificate. Thus, even if this Court were to permit Bletter to vicariously premise her Equal Protection claim on the selective treatment received by the persons selling her house, she has not alleged any impermissible consideration by the Village that motivated such actions towards them. Therefore, the Court finds that Bletter cannot maintain an Equal Protection claim under the undisputed facts of this case.

Because Bletter cannot demonstrate any constitutional right that has been denied, the Village is entitled to summary judgment dismissing Bletter's cause of action under Section 1983.

**3. As to the remaining state law claims**

 Under 28 U.S.C. § 1367(a), federal courts have supplemental jurisdiction over claims which could not otherwise be heard in federal court if those claims are so related to federal claims that they form part of the same case or controversy. *Seabrook v. Jacobson,* 153 F.3d 70, 71 (2d Cir.1998). Subsection (c) of Section 1367 lists several circumstances in which the federal court may choose not to exercise that jurisdiction, including where the state claim raises a novel or complex issue of state law; and where the district court has dismissed all claims over which it had original jurisdiction 28 U.S.C. § 1367(c)(1) and (3). The Supreme Court has suggested that "needless decisions of state law [by federal courts] should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them

a surer-footed reading of applicable law." *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), *see also Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). Where a pendent state claim turns on novel or unresolved questions of state law, especially where those questions concern the state's interest in the administration of its government, principles of federalism and comity may dictate that these questions be left for decision by the state courts, particularly where all federal claims have been dismissed. *Rounseville v. Zahl,* 13 F.3d 625, 631 (2d Cir.1994).

In light of these policies, this Court concludes that it should not exercise supplemental jurisdiction over the remainder of Bletter's state law claims. First, it is difficult to discern the precise nature of Bletter's tort claims or establish whether they allege intentional misconduct or negligence by the Village. Moreover, it appears that the underlying state law regarding whether a municipality owes a duty of care to avoid issuing a Certificate of Occupancy on non-conforming property is, while perhaps not novel, certainly under-developed and somewhat contradictory. *Compare Hill v. Middleton,* 146 Misc.2d 283, 549 N.Y.S.2d 918 (Sup.Ct. Rensselaer Cty.1989) (duty exists towards persons buying home) *and Clinton v. McKeon,* 174 A.D.2d 153, 578 N.Y.S.2d 685 (3d Dept.1992) (duty does not exist towards person buying home from private seller). Finally, as this case involves questions regarding a municipality's liability for actions in performs incident to its governmental function, the Court finds that the New York State's interest in the outcome of the issues in the case favors resolution in state court rather than federal court. This is especially appropriate given that this case is still in a relatively early stage and discovery has not yet been certified as complete.

Therefore, the Court declines to exercise supplemental jurisdiction over the remaining claims in this case.

## CONCLUSION

For the foregoing reasons, the Village's motion for summary judgment on Bletter's cause of action under 42 U.S.C. § 1983 is GRANTED. The remainder of the case is DISMISSED for lack of subject matter jurisdiction, without prejudice and subject to re-filing in state court pursuant to the terms of 28 U.S.C. § 1367(d). The Clerk of the Court is directed to close the case.

**SO ORDERED.**